HANNAH L. STEWARD

*v.*

SARAH KNIGHT et al.

[Filed June 1st, 1901.]

1. If a devise is expressed in indeterminate terms, yet if, from the whole will, it can be collected that the testator intended to give a fee, the devise will be construed to pass that estate.

2. Where a testator has a fee-simple, and devises his whole estate, though by words not technically descriptive of a fee-simple interest, they will be held to convey that estate. The devise extends to pass not only the whole quantity of the testator's property, but also the whole of his interest therein.

3. Where there is a primary gift of property in fee with a gift over of the same property to other persons, to take effect upon the happening of a definite event, the first devise will be held to pass a fee-simple subject to be defeated by the happening of the named event, and the second gift to be an executory devise, taking effect upon the happening of the named event.

4. The words "child or children," when used in a will as definitive of a class to whom a gift is made, are words of purchase, and primarily will be held to mean descendants in the first degree. Those words may be used as words of limitation, and, when so used, will be construed to mean descendants generally, if that appears from the will to have been the intention of the testator.

Steward *v.* Knight.

On bill to quiet title. Answers and agreed statement of facts.

The complainant is the owner and possessor of a farm in Lower Penn's Neck, in Salem county, to an undivided third part of which the defendants claim title. She files her bill under the act to compel the determination of claims to real estate in certain cases, and to quiet title to the same. *Gen. Stat. p. 3486.* She alleges that the defendants falsely claim to own her farm, and prays that they may set forth their title; that the rights of the parties may be adjudicated and settled by the decree; that it may be determined that her title is perfect, and that the defendants have no interest in the premises.

There are two answers and an agreed statement of facts, the substance of which is hereinafter set forth. There is but one question in dispute between the parties, and that is the character and extent of the estate which James B. Sinnickson received under a devise in the will of Jane Sinnickson, which is in these words:

"I, Jane Sinnickson of the township of Lower Penn's Neck, Salem county, and state of New Jersey, being of sound mind and memory, do make and publish this my last will and testament:

"I give and bequeath all the residue of my estate, after payment of debts, both real and personal, to my nephew, James B. Sinnickson, and in case he shall die without children, my will then is that both my real and personal estate be divided equally among his surviving brothers and sisters.

"In witness whereof, I have hereto set my hand and seal the 26th day of May, 1823.

her<br>
"JANE  X  SINNICKSON,<br>
mark.

"Signed, sealed, published and declared by the said Jane Sinnickson to be her testament and last will, in the presence of us,

"NEH GARRISON,<br>
"CHARLES SWING,<br>
"SENECA SINNICKSON."

Jane Sinnickson was, at the time of her death, the owner in fee of an undivided one-third part of the farm of which the complainant is now in possession. This undivided third portion passed under the foregoing devise. Jane Sinnickson's will was proven in Salem county surrogate's office on June 16th, 1823.

---

Steward *v.* Knight.

---

James B. Sinnickson was born in 1811, and died September 19th, 1898. He entered into possession under the devise to him, and subsequently purchased the residue of the farm. Before 1862 he had acquired the entirety of it, and then conveyed all of the premises to one Benjamin Lloyd, with covenant of general warranty. By intermediate conveyances from Lloyd the complainant derives her title to the whole of the farm. Under these deeds she came into its possession and now holds it. By James B. Sinnickson's marriage there was born to him but one child, a daughter, named Mary, who afterwards married William Palmer. This only child died April 1st, 1888, predeceasing her father. She left her surviving her six children—James L. Palmer and others, who are defendants in this suit. They are grandchildren of James B. Sinnickson and have survived him.

Sarah Knight, Seneca Sinnickson and Richard B. Sinnickson are the sisters and brother of James B. Sinnickson, who have survived him. They also are defendants in this suit.

All of the claimants derive their title from the will of Jane Sinnickson, and all their contentions turn upon their different constructions of the meaning of that will.

*Mr. Thomas G. Hilliard,* for the complainant.

*Mr. William T. Hilliard,* for the defendants Palmer et al.

*Mr. William J. Backes,* for the defendants Knight et al.

GREY, V. C.

There are several incidents appearing on the face of the will and in the relations of the testatrix to her beneficiaries which are beyond dispute, and which may throw some light upon the intentions of the testatrix as expressed in the will. It is apparent that the testatrix intended to dispose of her whole estate, real and personal, absolutely. It is also plain that she intended to prefer James over his brothers and sisters, and to give her whole estate to him. No part was, in the first instance, by her given to anyone else. At the time she (testatrix) made her will James was a boy twelve years old, and, being of such tender age,

Steward *v.* Knight.

the possibility that he might not even live to have children was obviously within the view of the testatrix. Bearing these incidental circumstances in mind as within the contemplation of the testatrix when she made her will, the different contentions of the parties may be considered.

The first question to be settled is whether the devise to James passed only a life estate or an estate in fee of some character.

It should be noticed that in the devise to James neither the word "heirs" nor anything equivalent to it is used to define James' estate. There may be some doubt whether the statute of August 26th, 1784 (*Rev. L. p. 60,* which appears in *Gen. Stat. p. 3763* § *35 et seq.*), which declares that estates given by will in general terms, without the use of the word "heirs," or its equivalent, should pass a fee, is applicable to the devise now under review. That statute declares itself to be applicable only when in the will to be affected by it there is "no further devise of the devised premises after the decease of the first devisee." In this case, if James should die without children, the property was given over to his surviving brothers and sisters. On the point whether such a gift over prevents the application of the statute, the decisions are not entirely harmonious. In *Den* v. *Allaire, Spenc. 7, 8,* there was a primary devise to Charles, in which no words of inheritance were used, and then a subsequent limitation over in these words: "It is my will that in case either of my sons before named should die without issue, that his share be equally divided between my surviving sons," &c. The supreme court held that, although no words of inheritance were used, the primary devise to Charles was a fee, under the statute of August 5th, 1784. That court did not appear to consider that the subsequent limitation over in case Charles died without issue was such a further devise as to prevent the application of the act of 1784. See *Spenc. 8, 24.*

It may be that the learned judges were of opinion that as the limitation over was not solely dependent upon the death of Charles, but required also that he die without issue, and that his brothers or sisters should survive him, the statute might apply and enlarge the undefined estate into a fee. They did not discuss this phase of the case, but declared that the statute

enlarged the devise to Charles into a fee. In a very recent case, presenting on this point the same incidents, Chancellor McGill took a different view. In *Brooks* v. *Kip, 9 Dick. Ch. Rep. 468*, there was a devise of real estate to the testator's sons John and Albert, by words which, by the aid of the statute of 1784, would have passed a fee. In a subsequent sixth clause were these words:

> "I do order that the real estate given to John and Albert, if they should die, or either of them, leaving no child or children as lawful heirs, then the said real estate * * * shall descend to my other children,"

The chancellor held that this later clause was such a further devise at the death of John that the statute of 1784 did not apply to pass a fee.

The words of the statute declaring its inapplicability in case there is a further devise after the decease of the devisee are without other qualification, and seem to deny its aid to any first devise given in general terms in all cases where there is a further devise after the decease of the primary devisee.

In the present case, however, the primary devise is not dependent upon the statute in question to enable it to pass a fee-simple estate. Where the primary devise is expressed in general terms in its definition of the estate given, yet if, from the whole will, it can be collected that the testatrix intended to give a fee, the devise will be construed to pass that estate. This result follows where the testatrix has a fee, and by the terms of her will, as in this case, gives *her whole estate,* though in undefined terms, to her devisee. Her gift intends to pass, not only the whole quantity of her property, but also the whole of her interest therein. She has an estate in fee and she gives an estate in fee. *Den* v. *Allaire, Spenc. 8; Carter* v. *Gray, 13 Dick. Ch. Rep. 413,* and cases there cited.

The primary devise to James B. Sinnickson must therefore be held to have passed to him a fee-simple estate.

If, however, subsequent words qualify or limit the original gift, a devise which would, without them, pass a fee-simple, may be reduced so as to pass only a less estate. *Den* v. *Taylor, 2 South. 417.* The defendants Palmer contend that the words attached to the devise to James, "in case he shall die without

children," must be read as if they were "die without issue," and they insist that they must operate to limit the generality of the gift of a fee which would go to James and his heirs general to a devise to him and those particular heirs who might be his children; in short, to him and the heirs of his body, the technical words of an estate tail. They further claim that the effect of such a devise to James and of the devise over was to create an estate tail in James; that the statute of June 13th, 1820 (*Rev. L. p. 774 § 2*), now the eleventh section of the statute of descents, operated upon this estate, and gave to James a life estate only, and upon his death to his grandchildren, the defendants James L. Palmer and others (who are the issue of his deceased child, Mary Palmer), a fee-simple.

If the devise to James B. Sinnickson should be held to have vested in him an estate in fee-tail, the claim of these defendants should be sustained, for the statute of June 13th, 1820 (*Rev. L. p. 774 § 2*), applies to every possible case in which an estate tail is called into existence (*Redstrake* v. *Townsend, 10 Vr. 378*), and executes the estate into a life interest in the first taker and a fee-simple in his children or grandchildren.

But even if it be declared that, in using the words "die without children," the testatrix meant "die without issue," it does not follow that the estate James received was a fee-tail. Whether such a devise has this effect depends upon the point whether the will indicates that the testatrix intended the second devise to take effect upon a definite failure of the issue of the first devisee, or upon an indefinite failure of such issue; that is, whether she meant James' brother and sister to take in case he had no issue living at some indicated period—as at his death—which would be a definite failure of issue, or only at some uncertain future period, when all James' descendants might have become extinct. If she intended the former, then such a primary devise has been construed to convey a fee-simple, subject to be defeated by James dying without issue living at the time of his death; if she intended the latter, then, inasmuch as there is a primary gift of an estate in fee to James and his heirs, and as the law cannot contemplate a failure of heirs general, it is held that the testator, by the use of the subsequent limiting words, must have intended

the property to go to the primary devisee and the heirs of his body, and not to his heirs general. *Den* v. *Taylor, 2 South. 418.* The statute of June 13th, 1820, which executed all estates tail would, in case the latter construction be adopted, give a life interest only to James and a fee-simple to his grandchildren, the Palmers, who survive him.

This will was made in 1823, and the testatrix died the same year. A will is of no force until the death of the testator. It then speaks for the first time. It must be construed according to the state of the law at the time when it takes effect. This was, of course, before the act of March 12th, 1851 (*Gen. Stat. p. 3761 § 25*), which declares that words which theretofore imputed an indefinite failure of issue of any person should thereafter be construed to mean a failure of issue in the lifetime or at the death of such person, and not an indefinite failure of issue, unless a contrary intention should appear by the will.

The English courts have tended to hold the words "dying without issue," and words of like import, to mean an indefinite failure of issue, unless the indications that the testator intended the limitation over to take place upon a definite happening were of a positive character.

In this country the courts, even before statutory enactment on the subject, have been more ready to discover a purpose to vest the limitation over upon a definite failure of issue. In this state the question as to what words will suffice to indicate a definite failure of issue has, I think, for the purposes of this case, been settled by the decisions hereinafter cited.

Whether in this case the testatrix intended the limitation over to take effect upon the happening of a definite or an indefinite event must be determined from the language of the will, considered from the point of view of the testatrix, of the pertinent circumstances which surrounded her. The testatrix gave the second devise in these words:

"In case he [James] shall die without children, my will then is that both my real and personal estate be divided equally among his *surviving* brothers and sisters."

She thus refers to those of James' brothers and sisters who, at

his death, should survive him. They were *then,* in case there was a default, to have and enjoy the estate. This was, therefore, a gift over at a fixed time, upon the happening of a prescribed event—the death of James without children, leaving a brother or sister him surviving. This view is also supported by the fact, apparent on the face of the will, that the gift over includes personal property, the enjoyment of which by the brothers and sisters the testatrix evidently contemplates as a possibility. This she could hardly have expected if it were postponed to a period so probably remote as the time when all of James' descendants might become extinct. If the words of condition were "die without issue," instead of "die without children," they would still be held to import a failure of issue when James died leaving any of his brothers or sisters surviving, and not a failure when the descendants of James might, at some unindicated future time, become extinct.

This view accords with the principles enunciated in the following cases, in which a limitation over in a second devise to survivors, in case the first taker died without issue, was held to intend a definite failure of issue. *Den* v. *Allaire, Spenc. 10,* where the words were "in case either of my sons should die without issue, that his share be equally divided between my surviving sons," &c. This case appears to have settled the law on this point in this state. *Seddel* v. *Wills, Spenc. 225; Den* v. *Howell, Spenc. 415; Kennedy* v. *Kennedy, 5 Dutch. 188. Den* v. *Snitcher, 2 Gr. 53,* decided in 1833, also touched upon the question. (In this last case cited James B. Sinnickson and his brothers and sisters were parties.)

These decisions should control the construction of the words used in the present will. The gift over must, therefore, be held to be limited upon a definite, and not an indefinite, failure of issue, and to give to the first taker an estate in fee, subject to be defeated upon non-performance of the condition imposed, and not a fee-tail executed by the statute. This construction also operated upon the gift over, to make it an executory devise, becoming effective, as is permissible in wills, upon the defeat of the precedently-given fee-simple estate, and not a remainder, con-

tingent upon a happening (an indefinite failure of issue) so remote that the law will not recognize and enforce it.

For these reasons the claim of the Palmer children, that James' estate, under the devise, should be construed to be a fee-tail, executed by the statute of June 13th, 1820, to give him a life estate and the fee-simple to them, cannot be sustained.

The defendants Sarah Knight and others, the surviving brothers and sisters of James B. Sinnickson, accept the construction that the devise to the latter passed a fee-simple estate, subject to be defeated upon non-performance of the condition that he die leaving children. They, however, insist that James did not perform this condition which the testatrix imposed, and that his fee-simple estate has, for that reason, been defeated, and that the limitation over to them, by way of executory devise, has become executed. They contend that the fact that James had a child— Mrs. Palmer—and that she had six children, all of whom survived James, their grandfather, is of no significance, because they insist that the testatrix required that James' own children should be living when he died, and they say if James had any number of children, if they all happened to die before he did, the estate of James was defeated, notwithstanding at the time of his death any number of grandchildren survived him.

It is obvious that this contention depends entirely upon the meaning given to the word "children" as used by the testatrix in her will. In their usual sense "child or children" are taken to be words of purchase; that is, they are understood to be used to designate a class of persons selected by the testator to receive his gifts. When so used, these words, being descriptive of the recipients of the testator's bounty, are understood in their primary sense, and they will not be construed to mean descendants, unless there is something in the context to show that the testator intended that children should include grandchildren, or unless the provisions will be inoperative without such a construction. *Brokaw* v. *Peterson, 2 McCart. 198; Feit's Executors* v. *Vanatta, 6 C. E. Gr. 85,* citing cases.

I have examined the very full line of decisions cited in this last case, and find that in each the question presented was whether grandchildren should be permitted to take, either by sharing with,

or by substitution for, children, in cases where there were children in existence, who accurately and fully answered the description as such, prescribed by the testator in his will. In those instances children in existence were held to be entitled to the exclusion of grandchildren, who claimed by substitution for, or in representation of, deceased children. *Brokaw* v. *Paterson, supra,* is claimed by defendants' counsel to control the case in hand as to the intention of the testatrix in using the words "die without children." But the Brokaw decision turns upon the question whether a grandchild should be allowed to take a share which, by the will, was given to a child. This is one of the cases where the word "children" is used as a word of purchase, defining a class who should take and excluding persons not in that class. They select the class which shall receive the testator's gift, and when so used must be exclusive of all those not within the class. But these words may be used by the testatrix, not as words of purchase, selecting a beneficiary, but as words of limitation, defining or limiting an estate given. If it is apparent on the face of the will that the testatrix did not use them as words of purchase, they should be given such construction as will carry her express intention into effect.

The case of *Sherman* v. *Sherman, 3 Barb. 387 (Supreme Court),* is relied upon by the defendants as an authority pertinent to the question here raised. In that case there was a devise to Humphrey in fee, and if he should die without child or children, then over, &c. Humphrey died without children. But the case is wholly inapplicable to that under consideration, for Humphrey does not appear to have died leaving any grandchild, to raise the question here in dispute, which is, whether James' dying leaving grandchildren was a performance of the condition which would save the estate given to him in fee from being defeated. In the *Sherman Case* the question was whether Humphrey took an estate in fee-simple absolute, or whether the limitation over, by way of executory devise, in case he died leaving no child, was good. This was the sole question. The case shows that Humphrey took a fee, subject to be defeated by his dying without children, with an executory devise over if that event happened. Humphrey does not appear to have left either children or grand-

children, but he attempted to devise the lands as if he owned a fee-simple absolute, and the court correctly held that the limitation over was good and had vested in the secondary devisees.

The recent case of *Brooks* v. *Kip, 9 Dick. Ch. Rep. 462,* also approaches the subject-matter here under consideration, but does not touch the essential point. In that case there was a devise to Albert and John in the fourth item of the will, with a limitation over in the sixth clause—

"if they should die or either of them leaving no child or children as lawful heirs, then the said real estate so bequeathed to them or either of them, (or the value thereof) shall *descend* to my other children share and share alike," &c.

The devise to John was intermediate in its terms, and, as expressed, would pass only a life estate. The further devise at the death of John was held to prevent the application of the statute of 1784 (*Gen. Stat. p. 3763 § 35*) to enlarge the interest of John into a fee; but the imposition of charges upon John by the will was held to have that effect. John *died without issue.* This incident prevents this decision from having any value as a precedent in the case under discussion. The dispute in the *Brooks* v. *Kip Case* was not as to the character of John's estate, which was conceded to be a fee-simple conditional, which was defeated by his death without issue, but as to the persons who were included within the devise over, under the phrase "my other children." In that case there were neither children nor grandchildren of John to present the point whether a fee-simple, which was subject to be defeated by a dying without children, was, in fact, defeated if the devisee died leaving grandchildren, so that the question here mooted was never either raised or considered.

In the case under consideration the limitation is "but in case he [James] shall die without children," then over, &c.; that is, James' fee-simple estate shall be defeated in case he die without children. This devise gives no estate to James' children. As it is here used, the word "children" does not select or designate a class who are to receive anything from the testatrix. It is therefore not to be here understood as a word of purchase, but of limitation, used by the testatrix to affect the estate given to

James.  It does not define the estate devised to James that is
fully characterized by the previous words of the will to be a fee.
The phrase is forceful solely to prescribe a condition, upon the
happening of which James' fee-simple estate should be defeated.
The numerous decisions holding that the words "child" or "chil-
dren" must primarily be taken to be words of purchase, meaning
strictly children in the first degree, are therefore of little aid in
this case, where the face of the will shows that the word "chil-
dren" is used as a word of limitation.

The real question to be determined is what condition did the
testatrix intend to impose upon James by the words "in case he
shall die without children," the non-performance of which should
defeat his fee-simple estate?

The defendants Mrs. Knight and others insist, with much en-
ergy, that the testatrix intended James' estate to go over if his
children predeceased him, even if he left grandchildren; that the
condition could only be performed by James dying leaving him
surviving children whom he had begotten; that leaving children
in the larger sense of descendants was not a performance of this
condition.

In considering this claim the first point to be settled is whether
the testatrix's intention was accomplished by James having chil-
dren born to him.

The testatrix says in case James "shall die without children."
Is the condition performed by James *having children* at some
time before he died?   Or must he leave children at the time of
his death?

This question as to the time when non-performance of such a
condition defeats the precedent estate has been passed upon in
several cases in this state, where the phrase "dying without issue"
has been held to mean dying without leaving issue living at the
death of the first taker, following *Pells* v. *Brown, Cro. James
590.*   See collation of cases and discussion in *Den* v. *Allaire,
Spenc. 11; Wurts* v. *Page, 4 C. E. Gr. 365; Seddel* v. *Wills,
Spenc. 223.*

The phrase "die without children," taken in connection with
the limitation over to the surviving brothers and sisters of the
first taker, must, in analogy to the above-cited cases, be held to

mean that the estate was to go over in case, at the time of James' death, he left no children.

The only remaining question is what did the testatrix mean by the words "die without children." What did she require to be done in performance of the condition she imposed. Did she mean, in case James' children should happen to die before him, to take away the preference which she had given James, though at the time of his death he might leave, as, in fact, he did, numerous grandchildren? On this point this case is one of first instance, so far as most careful examination by counsel and by myself has been able to discover. Cases are reported in which a fee is devised conditioned to be defeated in case the devisee die without children; but in none of them has the exact circumstance happened which here appears, for in none has it been claimed that the death of the devisee leaving no child, though he did leave grandchildren, has defeated his estate.

In ascertaining the testatrix's intention in the use of this phrase "in case he shall die without children," the language of the will must be considered in the light of the circumstances which surrounded the testatrix at the time her will spoke. James at the time was a boy, but twelve years of age. No children were then born to him. The testatrix could not, when she made her will, have contemplated an indirect benefit to any known child of James', as distinguished from any other of his descendants, for, as stated, at that time James had no children. She actually gave to James all that she had, and obviously intended to prefer him to all his brothers and sisters. It is unreasonable to believe that she intended to defeat her expressed preference, by making her gift of her whole estate to her favorite nephew liable to defeat by a chance which must have been almost fantastic in its uncertainty. Taking the words literally, James' estate would have been defeated if he died leaving but one child, for, in that case, upon defendants' contention, he would have died without children. Even allowing the requirement that he leave children to have been fulfilled if he died leaving one child, but holding the condition to be unperformed if this child predeceased James, and the testatrix's preference for James would still be defeated, although this child might have left many children, the

grandchildren of James, all of whom might survive him. That is the fact in this case—James' only child predeceased him, but his grandchildren have all survived him. As there was no child of James' in existence when the will was made, or when it spoke, whose living or dying the testatrix could have had in mind, she evidently used the word "children" in the broad sense of descendants—she meant if James, at the time of his death, left no descendants, his brothers and sisters should take.

This was the construction given to the words "die and leave no child or children" by Lord Ellenborough, delivering the opinion of the king's bench in *Doe* v. *Webber, 1 Barn. & Ald. 713.* In that case the devise was to "M. H. and her heirs forever, and in case M. H. shall happen to die and leave no child or children," then over in fee to J. B. The lord chief-justice, speaking for the king's bench, declared that this was not an estate tail in M. H., but a fee, with an executory devise over to J. B., in case M. H. died leaving no issue at her death. "Where the intent requires it, the word 'children' has not been confined to the immediate descendants, though that is the ordinary and proper sense, but has been extended to all descendants, whether mediate or immediate." This was a case of a devise held to be a fee-simple, subject to be defeated by non-performance of a condition that the devisee should happen to die and leave no child or children. The king's bench held that the intention of the testatrix to use the word "children" in the sense of "issue" of the first devisee was manifest, and that, if that devisee died leaving grandchildren, it was a fulfillment of the condition.

In *Doe* v. *Simpson, 3 Man. & G. 933,* in the exchequer chamber, brought up on error from the common pleas, there was a devise to the testator's son J. S., his heirs and assigns forever, but if it should happen my said son J. S. "shall die without leaving any child or children," then over, &c. The case turned largely upon the peculiar characteristics of a copyhold estate, but Lord Chief-Justice Denman held that the words "child or children" were used in the sense of "issue" generally. He commented upon the opinion of Lord Ellenborough, in *Doe* v. *Webber,* and declared that, although that decision was not necessarily required, and therefore could not be treated as an absolute authority, yet it

was certainly entitled to very great attention. He further said: "The extreme improbability that the testator, in the case before us, could have meant upon the mere accident of his having no grandchildren living at the death of his son, capriciously to disinherit his remote issue, seems, of itself, a strong ground for construing the word 'children' in the sense of 'issue' generally."

In *Parker* v. *Birks, 1 Kay & J. 156,* there was a devise to W., a nephew of the testator, and his heirs, but in case he should die without child or children of his body, lawfully begotten, then over. Sir William Page Wood, vice-chancellor, commenting on *Doe* v. *Webber, ubi supra,* as to the holding there made, that dying in default of children meant in default of issue, said, "so far I agree." Sir William further held that, in the case before him, W. took a fee-simple, subject to be defeated if, at his decease, he left no issue living.

Upon consideration of the whole case, the devise to James B. Sinnickson must be held to have passed to him a fee-simple estate, subject to be defeated if he died leaving no descendants: He died leaving six descendants, the children of his daughter, Mrs. Palmer, and thus performed the condition which made his estate a fee-simple indefeasible.

The result is that the complainant, Mrs. Steward, who holds, by sundry mediate conveyances, the fee-simple estate of James, is entitled to the relief prayed for in her bill of complaint.

I will advise a decree accordingly.