EMIL C. PETERS AND PETER K. McLEAN, TRUS-
TEES UNDER THE WILL AND OF THE ESTATE
OF CHARLES NOTLEY, DECEASED *v.* WIL-
LIAM COLE VANNATTA AND HIS WIFE VIC-
TORIA MARIA K. VANNATTA NEE NOTLEY;
WILLIAM CHARLES K. VANNATTA AND HIS
WIFE HARRIET L. VANNATTA NEE WOND;
ALBERT C. HOLT AND HIS WIFE ROSE PII-
LANI HOLT NEE VANNATTA; HENRY JAMES
HOLLINGER AND HIS WIFE ALICE EMMA N.
HOLLINGER NEE VANNATTA; DAVID AKANA
ESPINDA, JR., AND HIS WIFE VICTORIA
MARIA K. ESPINDA NEE VANNATTA; JOHN
K. McKEAGUE AND HIS WIFE PATRICIA ANN
K. McKEAGUE NEE VANNATTA; VERNAL K.
PRATT AND HIS WIFE DOLLY LOU PRATT
NEE ESPINDA, A MINOR; WILLIAM K. NOT-
LEY, A MINOR, BY HAWAIIAN TRUST COM-
PANY, LIMITED, AN HAWAIIAN CORPORA-
TION, THE GUARDIAN OF HIS ESTATE; WIL-
LIAM CHARLES VANNATTA, JR., A MINOR;
HARRIET HAUNANI VANNATTA, A MINOR;
GEORGE IVAN VANNATTA, A MINOR; LAVINA
KAUI VANNATTA, A MINOR; ROSEWYLE NAI-
LIMA LISHMAN, A MINOR; VALMER A. N.
HOLLINGER, A MINOR; VICTORIA MARIA K.
HOLLINGER, A MINOR; HENRY JAMES HOL-
LINGER, JR., A MINOR; MICHAEL T. HOLLIN-
GER, A MINOR; DAVID AUGUSTUS ESPINDA
III, A MINOR; VERNAL K. PRATT, JR., A MI-
NOR; MONA N. McKEAGUE, A MINOR; PAUL-
ETTE N. McKEAGUE, A MINOR; FRANCIS F.
RIESS AND HIS WIFE, LILLY RIESS NEE
NOTLEY; JULIUS A. SOFRANIK AND HIS
WIFE DOROTHY K. M. SOFRANIK NEE HEEN;

JOHN K. HEEN AND HIS WIFE ELIZABETH HEEN NEE STEWARD; HANNAH M. C. HEEN, A MINOR; HARRIET K. MOKUAU NOTLEY; JOHN K. NOTLEY, JR., AND HIS WIFE DELILIA NOTLEY NEE PEREIRA; HARRIET K. NOTLEY; ROBERT C. K. NOTLEY, AND HIS WIFE YVONN NOTLEY NEE CATHCART; OSWALD LAU AND HIS WIFE JASMINE N. LAU NEE NOTLEY; LLEWELLYN G. NOTLEY; GWENDOLYN L. NOTLEY; WILLIAM VICKERY AND HIS WIFE MELISSA H. VICKERY NEE NOTLEY; HELEN N. V. JOSEPH NEE NOTLEY; JOHN M. KERR AND HIS WIFE NANCY KERR NEE NOTLEY; JOHN K. NOTLEY III, A MINOR; SAXON L. NOTLEY, A MINOR; LEROY C. NOTLEY, A MINOR; ERIC C. NOTLEY, A MINOR; VAUGHN A. NOTLEY, A MINOR; ROBERT C. K. NOTLEY, JR., A MINOR; STEPHANIE LOIS LAU, A MINOR; WILLIAM K. VICKERY, A MINOR; EDDIE D. VICKERY, A MINOR; WILLIAM NOTLEY GUNDERSON; JOHN M. KERR, JR., A MINOR; HANNAH M. KERR, A MINOR; SERAFIN MACTAGONE AND HIS WIFE MARVELIE MACTAGONE NEE GUNDERSON; MICHELLE M. MACTAGONE, A MINOR; HENRY T. HUGHES AND HIS WIFE ANGELA MARIE HUGHES NEE GUICHEBARD; EMMA V. HUGHES; CLARENCE N. HUGHES AND HIS WIFE AMELIA HUGHES NEE HOLT; CHARLES E. HUGHES AND HIS WIFE TILLIE L. HUGHES NEE BRANDT; WILLIAM N. HUGHES; HENRY T. HUGHES, JR., AND HIS WIFE VIOLET K. HUGHES NEE KIMEKEO; JAMES K. WOOLSEY AND HIS WIFE HENRIETTA K. WOOLSEY NEE HUGHES; THELMA LOIS HUGHES, A MINOR;

BRANDT K. HUGHES; CHARLES E. HUGHES, JR.; THOMAS H. HUGHES, A MINOR; CLAIRE K. HUGHES, A MINOR; EMMLYN V. K. HUGHES, A MINOR; JAMES K. WOOLSEY, JR.; THOMAS H. WOOLSEY, A MINOR; SAM ALAMA AND HIS WIFE HELEN KAWAILANI ALAMA NEE NOTLEY; NATHANIEL WARD AND HIS WIFE YVONNE K. WARD NEE ALAMA; WILLIAM ERIC DANFORD AND HIS WIFE RONA F. DANFORD NEE KATTERFELVT; JAMES SHARPE DANFORD AND HIS WIFE ETHEL DANFORD NEE EWING; HENRY VINCENT DANFORD AND HIS WIFE MAY DANFORD NEE RAMSAY; RONA ANN DANFORD, A MINOR; LORNA SHARPE DANFORD, A MINOR; WILLIAM ERIC DANFORD, JR., A MINOR; MAYVIN DANFORD, A MINOR; HENRY GRANVILLE DANFORD, A MINOR; BARBARA ELLEN DANFORD, A MINOR; BISHOP TRUST COMPANY, LIMITED, AN HAWAIIAN CORPORATION, TRUSTEE OF THE McINERNY FOUNDATION; C. S. WO AND SONS, A COPARTNERSHIP; TERRITORIAL BUILDING AND LOAN ASSOCIATION, LIMITED, AN HAWAIIAN CORPORATION; THE BISHOP NATIONAL BANK OF HAWAII AT HONOLULU, A NATIONAL BANK; AND HAWAIIAN TRUST COMPANY, LIMITED, AN HAWAIIAN CORPORATION, AS TRUSTEE OF THE INTER VIVOS TRUST CREATED BY HELEN KAWAILANI ALAMA BY TRUST INSTRUMENT OF MARCH 16, 1926, AS AMENDED, OF WHICH HELEN KAWAILANI ALAMA IS ONE OF THE BENEFICIARIES, AND AS GUARDIAN OF THE ESTATE OF WILLIAM K. NOTLEY, A MINOR, HARRIET K. MOKUAU NOTLEY.

NO. 2993.

EMIL C. PETERS AND PETER K. McLEAN, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF CHARLES NOTLEY, DECEASED *v.* NANCY KERR.

NO. 2994.

ARGUED JUNE 1, 1955.                    DECIDED NOVEMBER 15, 1955.

STAINBACK AND RICE, JJ., AND CIRCUIT JUDGE McKINLEY IN PLACE OF TOWSE, C. J., ABSENT.

OPINION OF THE COURT BY STAINBACK, J.

This case was initiated by the trustees under the will and of the estate of Charles Notley who filed a bill for instructions asking six questions which raised two issues of law: (1) Has the trust estate created by the will of Charles Notley terminated? and (2) If the trust is terminated, to whom and in what shares should distribution be made?

The facts in this case are as set forth in the opinion of this court in *Trustees Notley Est.* v. *Vannatta et als.,* 40 Haw. 287, where upon an interlocutory appeal this court held that the trust had terminated upon the death of the testator's niece, Emma Mullinger Danford, on March 18, 1952.

The question now before this court is how the distribution of the corpus should be made.

The provision of the will involved in this bill for in-

structions is article sixth. After making various bequests of money and personal property, the testator conveyed all the rest, residue and remainder of his estate to trustees, in trust, to pay the income and distribute the corpus in the following manner:

A. "One-sixth thereof to my wife Mary K. Notley during the term of her natural life, such payment to be in lieu of her dower right in my estate, and from and after the death of my said wife, the said one-sixth share or part of said income shall be divided among the surviving devisees named in this my will in the shares and proportions hereinafter set forth and limited to each of them.

B. "One-sixth thereof to my son William during the term of his natural life, and from and after the death of my said son William, then to Melisa, the wife of said William, during the term of her natural life; and from and after the death of the said Melisa, the said one-sixth share or part of said income shall be divided among the surviving devisees share and share alike.

C. "One-sixth thereof unto the children of my son Charles Notley Jr. named, John, Victoria Maria, Lilly and William, share and share alike. And I hereby direct my said Trustees not to pay any of said share of the said income unto any of the above named children of my said son Charles Notley, Jr. until such time as each of them, being males, shall arrive at the age of Twenty-one years, and being females, shall arrive at the age of Eighteen years; and that in the meantime and until the happening of such event as to each of said children, I direct my said Trustees to keep said one-sixth share of said income invested in such securities as they or their successors may think proper, and the income, rents, issues or profits thereof shall be divided equally among said children upon the arrival of them at the age of Twenty-one and Eighteen years respectively as hereinbefore limited. And in the

event of the death of any of said children before the arriving at the ages aforesaid, or in the event of their death after the arrival at the ages aforesaid, the heirs of such children shall take the share of the child so dying.

D. "One-sixth thereof unto my daughter Maria, the wife of Thomas Hughes, during the term of her natural life, free from all control or liability of the marital rights of any husband.

E. "One-sixth thereof to my son David Fyfe Notley during the term of his natural life, and

F. "One-sixth thereof to my niece Emma Danford, nee Mullinger, during the term of her natural life free from all control or liability of the marital rights of any husband.

G. "And from and after the death of all of my said children and my said niece Emma Danford, nee Mullinger, I hereby direct my said Trustees or their successors to convey all of my estate among the heirs-at-law of my said children William, Maria, David Fyfe, and my said niece Emma Danford, nee Mullinger, and the children of my said son Charles Notley, Jr., namely: — John, Victoria Maria, Lilly and William, share and share alike.

H. "And I direct, that until the death of all the legatees last named, the income accruing from said trust estate, shall, until such event happen, be paid among the heirs at law of all such as may have died before the death of the survivor of said last named legatees."

The widow elected to take her dower so that the provision of paragraph A of article sixth providing that "from and after the death of my said wife, the said one-sixth share or part of said income shall be divided among the surviving devisees named in this my will in the shares and proportions hereinafter set forth and limited to each of them" was accelerated and became effective, so that the income from the trust estate was then payable in five equal

parts, namely, to his children (William, Maria and David Fyfe Notley), to his niece (Emma Mullinger Danford), and to John, Victoria Maria, Lilly and William Notley (children of his son, Charles Notley, Jr.).

As stated by the court below, the will clearly shows that the primary objects of the testator's bounty were his wife, his children — except Charles, Jr., — his niece, and the four named grandchildren (children of his son, Charles, Jr.). The reason the testator did not include his son Charles, Jr., in his will is stated both in the opinion heretofore filed in this court (*Trustees Notley Est.* v. *Vannatta et als.,* 40 Haw. 287) and *In the Matter of the Will of Charles Notley, Deceased,* 15 Haw. 435, 437, and need not be repeated here.

As showing the primary objects of testator's bounty, the testator provided by the language of article sixth that the income from his estate (except the share of William) should be paid in equal shares to the above beneficiaries and their heirs throughout the life of the trust; note the provision that if one of the members of this class should die prior to the termination of the trust, "the income accruing from said trust estate, shall, until such event happen, be paid among the heirs at law of all such as may have died before the death of the survivor of said last named legatees." (Paragraph H of article sixth.)

As to William's share of the income, in case of his death the income was to go to Melisa, the wife of William, during the term of her natural life, "and from and after the death of the said Melisa, the said one-sixth share or part of said income shall be divided among the surviving devisees share and share alike."

The chancellor below held that the words "heirs-at-law" as used in paragraph G of article sixth meant "children" and not legal heirs. The chancellor also held that since William, the testator's son, died without children, the

share which would have gone to his "heirs-at-law" (children) lapsed and was distributable to the ten grandchildren of the testator and the three children of Emma Danford, his niece; further, that the distribution should be made per capita among these thirteen, and in case any of the thirteen had deceased prior to the time of distribution, the share of such taker should be distributed to his or her issue per stirpes.

In his decision the chancellor held that the "heirs-at-law" as used in paragraph G of article sixth meant "children," basing his conclusion upon the provisions relative to the distribution of the *income* prior to the termination of the trust, stating that if the words "heirs-at-law" meant "heirs," Charles, the eldest of the sons who was disinherited, might inherit as an heir of his brothers or sisters if they died prior to his death. (He might also have added that Charles might have been an heir of his own children.) This is a rather labored argument to arrive at the conclusion that the words "heirs-at-law" mean not "heirs" but "children." If the testator had so intended it would have been a simple matter to use "children" or "issue of the body" or other provision for the inheritance by the respective heirs, or he might have inserted a provision specifically excluding Charles. It is indeed a left-handed way of arriving at a conclusion that the words "heirs-at-law" meant "children," and that "the testator meant not what he said, but what he intended to say."

Unless something appears to clearly indicate a different intention, it must be presumed that the testator used the word "heirs" in its ordinary legal sense, an heir being one upon whom local law of descent casts inheritance on the ancestor's death. (*Goodgeon* v. *Stuart,* 144 Atl. 670, 50 R. I. 6.)

The word "heir" when uncontrolled by the context designates a person appointed by law to succeed to the real

estate in question in case of intestacy. (*Rolofson* v. *Rolofson,* 246 Ill. App. 205.)

"Heirs" is used in its legal sense unless the context shows a contrary intent. (*Johnson* v. *Coler,* 174 N. W. 654, 655, 187 Iowa 734; *Kelley* v. *Vigas,* 112 Ill. 242, 245; *In re Johnson's Estate,* 225 N. W. 818, 820 [Wis.]; *Beardsley* v. *Johnson,* 134 Atl. 530, 531 [Conn.]; *Newport Trust Co.* v. *Newman,* 49 R. I. 93; *Loeb* v. *Goldheim,* 153 Md. 248; *Hudnutt* v. *John Hancock Mutual Life Ins. Co.,* 224 Iowa 430; 3 Page, *Wills,* § 1014, p. 130.)

Ordinarily "heirs" and "heirs-at-law" are equivalent and mean those who take as heirs at law of realty and as next of kin of personalty, but we can see no reason why if the testator used the word "heirs" in the sense of "children" he would insert meaningless words such as "at law" after the word "heirs." Certainly if the will was drawn by an attorney, as it obviously was, such terms would not be used to indicate "children." It is true that the word "heirs" may mean "children" if such intent appears from an examination of the will as a whole. This is particularly true where the will was drawn by a layman. Such was obviously not the case in the present circumstances. That the will was drafted by an attorney who had a thorough knowledge of legal terms appears throughout the will again and again. However, this court will judicially note its decision when this will first appeared before this court in the case of the *Will of Charles Notley,* 15 Haw. 435, 439, where the following appears: "The will was executed at the office of Mr. Notley's attorney in Honolulu. The instructions as to its provisions were given to the attorney there. * * * The will apparently differed from a former will in the one respect that the son Charles' children were substituted for him. The first codicil, substituting Mr. Brown for Mr. Walker as executor and trustee, and expressly ratifying the will, was executed on the island of

Hawaii * * *. It was prepared by the attorney at Mr. Notley's request made by letter * * *. It was drafted from instructions given by Mr. Notley alone at the attorney's office * * *." Mr. Cecil Brown, the attorney who witnessed the will, obviously drafted it and the court will further judicially note that he was an attorney duly licensed to practice in all the courts of this Territory for many years. We repeat, no attorney with the slightest familiarity with conveyancing would use such method of leaving his front door and traveling around the world to get to his back door.

The argument that because the testator provided the share of William's *income* upon his death should go to Melisa, and upon her death to the surviving objects of the testator's bounty, not to the heirs at law of William or Melisa, plus the fact that William had no children and the testator probably thought William would have no children as he was a leper committed to Molokai, is an indication that the testator used the word "heirs" as "children" proves too much. For example, if the words "heirs-at-law" meant "children" and the testator knew, or apparently thought, William would have no *children,* why should he use the words "heirs-at-law" of William in disposing of the *corpus* of the estate?

The attorneys for certain of the appellants moved that evidence be admitted, or that this court take judicial notice, that William was committed to Kalaupapa, the leper settlement, on the 6th day of August, 1888, and remained there until the date of his death on August 21, 1913; this was for the purpose of showing William could not beget children.

It has been stipulated by all parties hereto that if this court considers such facts material, the records of the Bureau of Hansen's Disease will show that William was committed to Kalaupapa, the Hansen's Disease (Leper)

Settlement, on the 6th day of August, 1888, and remained there until the date of his death on August 21, 1913; that Melisa Notley, wife of William Notley, went with her husband to the Kalaupapa Settlement as a kokua (helper) for her husband in 1888; that she was at the settlement at the time of her husband's death in 1913; that she frequently moved to Honolulu but returned to the settlement and finally died there in 1915.

While the court will take notice of such facts as evidence, it will take judicial notice that those afflicted with Hansen's disease or leprosy are not thereby rendered sterile but many so afflicted, both men and women, do have children; that for many years when the population of Kalaupapa was much more numerous than it is today the Territory maintained a school for nonleprous children of leprous parents, the children being taken from their mothers at the time of their birth to prevent infection.

It may be possible that the testator realized that William was very unlikely to have any children and therefore his "heirs" after Melisa's death would be remote relatives rather than issue, as in the case of the other income takers, so he provided that upon William's death, and then Melisa's, that share of the income should be divided among the surviving devisees, rather than remote heirs, the life-income devisees being the chief objects of the testator's bounty. However, it will be noted that upon the termination of the trust the corpus of the estate was to go to the "heirs-at-law" of William just as the "heirs-at-law" of the other children and the "heirs-at-law" of the niece, Mrs. Danford, and the children of Charles, Jr., namely, John, Victoria Maria, Lilly and William. It may well be that the testator had Melisa in mind for if she survived the termination of the trust she would inherit as one of the "heirs-at-law" of William and thus not be left penniless.

Obviously, the chief objects of the testator's bounty were his children (William, Maria, David Fyfe) and his niece (Emma Mullinger Danford) and the children of Charles Notley, Jr. (namely, John, Victoria Maria, Lilly and William), and when the life estate of his children and niece ended, the testator was perfectly willing that the laws of inheritance should take effect as to the corpus of the estate which he divides into five shares. Generally, in the absence of unusual circumstances there can be no fairer distribution of property than as provided by the law of descent and distribution.

In *Lidgate v. Danford*, 23 Haw. 317, 321, 322, on the question of the distribution of William's income after his death and that of Melisa and pending the termination of the trust, the argument was made that as the heirs at law of William "will partake in the final disposition of the estate under clause G there is nothing in the will to warrant taking the *income* now in dispute from those heirs pending the death of the last surviving child; that the clearly expressed intention that the heirs at law of each beneficiary should take the share of their respective ancestors should not be made to yield to the alleged ambiguous phrase 'surviving devisees;' that the general intent shown by the entire will that the estate should be kept intact for the benefit of the several beneficiaries and their respective heirs should prevail over the ambiguously expressed particular intent shown by the language of clause B; and that if the two clauses are irreconcilable the later in position should prevail over the earlier." (Emphasis added.)

This court held that in the conflict between the two provisions of the will — that is, the general provision of clause H which provided "that until the death of all the legatees last named, the income accruing from said trust estate, shall, until such event happen, be paid among the

heirs at law of all such as may have died before the death of the survivor of said last named legatees," and the specific provision of clause B which provided that "from and after the death of the said Melisa, the said one-sixth share or part of said income shall be divided among the surviving devisees share and share alike," — the specific provision will prevail over the general provision, regardless of the order in which they stand in the will. The court stated: "We are satisfied that the two provisions can be harmonized upon the rule of construction that where there is an inconsistency between a general and a specific provision the latter will prevail regardless of the order in which it stands in the will * * *."

The court further pointed out that there is nothing in the will to indicate that the principle of division was intended to operate generally, that the testator made a specific provision with regard to the disposition of the share given to William and to Melisa upon the death of the latter. In other words, the fact that the testator disposed of William's one-fifth share of the income after Melisa's death in a manner different from that in which he disposed of the other fifth-shares and different from the way in which he disposes of the corpus after the termination of the trust does not affect the validity of the disposal of this one-fifth share. The court did not go into the reasons why the testator might have made this provision, but the fact that it is clearly made is sufficient for the court to carry out the testator's intent as thus expressed.

In the former proceeding before this court, we held that paragraph H related only to the payments of income after the death of a life beneficiary before the termination of the trust. We also held that the words used in paragraph H "that until the death of all the legatees last named," the words "legatees last named" did not refer to John, Victoria Maria, Lilly and William, the children of Charles

Notley, Jr., so far as termination of the trust was involved but that paragraph G fixed the date of the termination of the trust, that is, upon the death of the last survivor of the testator's children and his niece, Emma Danford. Further, his direction in clause G to convey among the "heirs-at-law," the words "heirs-at-law" relate only to William, Maria, David Fyfe and the testator's niece Emma Danford, but not to the children of Charles Notley, Jr.; the direction is to convey to the heirs of testator's children and Emma Danford *and* to the children of Charles Notley, Jr., namely, John, Victoria Maria, Lilly and William.

As the "heirs-at-law" in clause G relate only to the heirs at law of testator's children and his niece. Emma Danford, so the words "share and share alike" inserted after the names of John, Victoria Maria, Lilly and William, and after the colon which precedes their names, refer to these children and not to the "heirs-at-law" of testator's children and niece. This appears both from the grammar and arrangement of the words and also from the testator's obvious intent to let the law of descent and distribution operate after the death of the life tenants.

Where a gift is to the heirs of a person or persons, not only does the statute of inheritance and distribution designate the takers, but in the absence of a contrary intent appearing in the will it governs the share of each. (57 Am. Jur., *Wills,* §§ 1291, 1292, pp. 855, 856.)

The court below made the argument that the words "share and share alike" in clause G would have no meaning if applied to the four named grandchildren only, as such would be the result of the language in making a gift to them without using the words "share and share alike."

It will be noted that when the testator set forth in paragraph C that one sixth of the income was to be paid to the named children of the testator's son Charles Notley, Jr., he used the words "share and share alike" following

the names of John, Victoria Maria, Lilly and William. This phrase is repeated in the final distribution and as thus used it shows definitely that the interests of these children were not joint or dependent upon survivorship but separate and vested holdings in common both in the income and in the remainder.

Further, the general rule is that when there is a gift to a class as such, words denoting equality of division usually apply to the prospective classes regardless of the number of persons in each class. This is particularly true where there is a gift to individuals and gifts to classes.

In 5 American Law of Property, section 22.62, pages 449, 450, the author points out that the distribution of a gift to "heirs" and the like is, as a general rule, controlled by the statute that is applied to ascertain the takers. The author states that "The necessity of determining whether he intends a different basis is most frequently presented when the gift to the group is to them 'equally' or 'share and share alike.' " He then points out that "Some courts say under these circumstances that the words 'share and share alike' mean that each stirps is to have an equal share, with the result that the *per stirpes* distribution provided in the statute is carried out, thereby nullifying the significance of the words 'share and share alike.' Other courts take the view that the testator by such words manifests a desire for a *per capita* distribution. The writer favors the former of these two views as to the effect of the words 'equally' and 'share and share alike,' because he is convinced that the choice of the word 'heirs' and the like to describe the beneficiaries of a disposition is made by the testator after he has exhausted his specific desires and he has in mind that the property is to pass as it would on intestacy. The casual way in which words such as 'equally' and 'share and share alike' are tacked on to these limitations does not suggest that the testator did it designedly

to change materially the process of letting the law take its course."

It has been generally stated that in the absence of any testamentary direction to the contrary the per-stirpes rule of distribution should be adopted, that "where the question is in the balances of doubt, the doubt is to be solved in favor of a taking *per stirpes* rather than *per capita*." (*Claude* v. *Schutt,* 211 Iowa 117, 233 N. W. 41 [1930]; 57 Am. Jur., *Wills,* § 1292, p. 855.) When the real intent of the testator is in doubt and the language of the will is consistent with such a distribution, there is a presumption in favor of the natural heirs of a distribution according to the statutes of descent and distribution. (*Raymond* v. *Hillhouse,* 45 Conn. 467.)

The cases are countless and seemingly in hopeless confusion as to the preference of courts for per-stirpes or per-capita distribution, so we will not make any attempt to discuss the numerous cases cited in the briefs of the various parties hereto and in the textbooks. (See note in 16 A. L. R. 16.) However, an interesting case (because of the use of the connecting word "and," as in the present case) is that of *Dahmer* v. *Wensler,* 350 Ill. 23, 182 N. E. 799 (1932) wherein a provision of the will reads: "The balance that is left on hand I give to the children of John Dahmer and Charles Wensler and Henry Wensler in equal parts." John Dahmer and Charles Wensler were dead at the time the testator executed his will. The court held that the will contemplated a distribution in three equal parts — one part to the children of John Dahmer, one part to the children of Charles Wensler, and one part to Henry Wensler — the court stating: "The connective 'and' was inserted both before and after the second of the three names in the section. If the testator had intended to give the residue of his estate to the children of John Dahmer, Charles Wensler, and Henry Wensler, as the appellees

contend, he probably would have omitted the word 'and' before the name 'Charles Wensler.' The testator is presumed to have had a purpose in the use of the connective before that name. \* \* \* Its use in that position indicates that the testator restricted the application of the word 'children' to those of the persons first and secondly named, and that, by the repetition of the connective after the name 'Charles Wensler', the testator added, not the children of Henry Wensler, but the latter himself, as a residuary legatee and devisee."

Thus, in the present case, as we pointed out in the former opinion in this case, the second "and" is an indication of the testator's intention. The second "and" appearing before "the children of my said son Charles Notley, Jr.," puts them as a class of takers along with the other class of takers in paragraph G, namely, the heirs-at-law of William, Maria, David Fyfe, and the heirs-at-law of Emma Danford.

See also *Laisure* v. *Richards,* 56 Ind. App. 301, 103 N. E. 679 (1913), as follows: "Where a devise is to several persons of different classes, bearing different degrees of relationship to testator, and the language of the will leaves the question of distribution in doubt, or the language does not exclude a distribution per stirpes, the will must be construed as intending a distribution per stirpes, and not per capita." Again: "Generally, under a devise to heirs, without naming them, the devisees will take in the proportion prescribed by the *statute of distribution,* and, if not of equal degree, they will take by right of representation, in the absence of a declaration in the will to the contrary." (Emphasis added.)

In connection with the language of the case just quoted, it is to be noted that under the provisions of section G of article sixth the remaindermen would in all probability be standing in different degrees of relationship to the

testator. Thus, some of the persons were grandchildren of the testator, that is, the named children of Charles Notley, Jr., and certainly the heirs of Emma Danford (although the testator apparently regarded and treated her as a daughter) would be of a different degree of relationship than these grandchildren. Likewise, the heirs of the other children of the testator might be grandchildren, great-grandchildren or others of no blood relationship to the testator.

Again, it has been frequently stated that the fact the annual income of a trust estate until the distribution of the capital is distributable per stirpes is sufficient ground for presuming that a like principle was to cover the gift of capital. (*Brett* v. *Horton,* 4 Beav. 239.) In the case before us, with the exception of the gift to William there was a per stirpes preservation of the gift of the income.

Further, it will be noted that in section H of article sixth the testator provided "that until the death of all the legatees last named, the income accruing from said trust estate, shall, until such event happen, be paid among the heirs at law of all such as may have died before the death of the survivor of said last named legatees." In this connection see *McMillan* v. *Peters,* 30 Haw. 574, that such income goes to the heirs of David Fyfe Notley.

As an argument for per capita distribution several of the briefs quoted (apart from its context) the statement in our former opinion involved in this case to the effect that "if we adopt the interpretation that the remainder-men are the 'heirs' of the testator's children (William, Maria, David Fyfe) and the niece, Emma Danford, and the 'children' of Charles Notley, Jr., this would apparently tend to put all the grandchildren of the testator on an equal footing as remaindermen, as the testator well knew that it was very probable that the heirs of the testator's children would be their children, his grandchildren, as

are the children of Charles Notley, Jr." (*Trustees Notley Est.* v. *Vannatta et als.,* 40 Haw. 287, 296, 297.)

This was to point out one reason why the words "heirs-at-law" did not apply to the children of Charles Notley, Jr.; that the gift of a portion of the remainder was to be to the children of Charles Notley, Jr., namely John, Victoria Maria, Lilly and William, and not to the heirs of such children. Since the other remaindermen would probably be grandchildren of the testator, as were the children of Charles Notley, Jr., these grandchildren (children of Charles Notley, Jr.) would have their share of the fee and not be merely life tenants. It had nothing to do with the division among the various remaindermen as to whether the distribution should be per stirpes or per capita. The language meant that all grandchildren would be on an equal footing as remaindermen, whether they took per stirpes or per capita. If each class of remaindermen takes equally, each surviving grandchild will be a remainderman. We might further state that a per capita distribution would not put the grandchildren on an equal footing but would give to great-grandchildren and possibly other heirs an equal share with the surviving grandchildren.

Many rules of construction have been cited in the briefs by the various parties hereto and many citations of authorities which we have not discussed because, as the rural weather prophets say, "all signs fail in dry weather." The rules, as well as the cases, can have very little control and effect as each will presents a separate, distinct and different problem, as separate and distinct as the various testators themselves. The duty of the court is to ascertain the intention of the testator as expressed in the will. As stated in our former opinion, the principles of construction may be regarded merely as guides for ascertaining the testator's intention, having in themselves no force and effect if the testator's intention is otherwise clear.

In conclusion, we are of the opinion that:

The testator fully understood and used the words "heirs-at-law" in the legal sense and not as meaning "children";

As used, the words "heirs-at-law" in section G referred to and meant "heirs-at-law" of the testator's children (William, Maria and David Fyfe) and of the testator's niece (Emma Danford) but did not refer to and mean the "heirs-at-law" of the children of Charles Notley, Jr., namely, John, Victoria Maria, Lilly and William;

The words "share and share alike" in section G refer to the children of Charles Notley, Jr., namely, John, Victoria Maria, Lilly and William, and do not refer to the "heirs-at-law" of the children of the testator or his niece;

Further if the words "share and share alike" do refer to the heirs of the testator's children (William, Maria, David Fyfe) and the testator's niece (Emma Danford), they indicate that each of the classes set forth in paragraph G is to be given an equal share in the remainder, that is, the corpus should be distributed per stirpes to the "heirs-at-law" of the testator's children (William, Maria and David Fyfe), to the "heirs-at-law" of the testator's niece (Emma Danford) and to the children of Charles Notley, Jr., that is, John, Victoria Maria, Lilly and William.

The case is reversed and remanded for further proceedings in accordance with this opinion.

*Frank D. Padgett* (*Robertson, Castle & Anthony* with him on the briefs) for appellant Helen K. Alama.

*Edward Z. Buck* (*Lewis, Buck & Saunders* on the brief) for appellant Nancy Kerr, cross appellant.

*Emil C. Peters,* for petitioners-appellees, was present but neither filed a brief nor argued.

*Masaji Marumoto* (also on the brief) for William Eric, Henry Vincent and Ethel Danford, appellees.

*Ray J. O'Brien* (also on the brief) for Henry T. Hughes and Angela Maria Hughes, appellees.

*Charles E. Cassidy* (*Pratt, Tavares & Cassidy* and *Daniel H. Case* on the brief) for Emma V., Clarence M., Charles E. and William N. Hughes, appellees.

*Kenneth S. Lau* (*William S. Richardson* and *Yoshiaki Nakamoto* with him on the brief) for Mrs. Victoria Maria K. Vannatta, appellee.

*Thayer & Dawson* for Lily Riess, appellee, filed brief but did not appear.