# IN THE MATTER OF THE TRUST ESTATE OF KALEIPUA KANOA, DECEASED.

### Nos. 4363 and 4364.

JUNE 26, 1964.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, AND LEWIS, JJ., AND CIRCUIT JUDGE OKINO IN PLACE OF MIZUHA, J., DISQUALIFIED.

*Per Curiam.* This proceeding was initiated by a bill for instructions filed by Bishop Trust Co., Ltd., successor trustee of the testamentary trust created by Kaleipua Kanoa, who died on September 21, 1897.

By her will, which was written in the Hawaiian language, the testatrix set up a trust of her residuary estate, naming five individuals, Kanehiwa (k), Hoomalu (w), Kaleipualiilii (w), Eva Kapualanilehua (w), and Lukela (k), as initial income takers, with provision made for substitution upon the death of any of them. The trust was to terminate on the death of the survivor of the five named beneficiaries, which occurred with the death of Lukela on March 29, 1962.

An acceptable translation of the distribution clause of the trust, without interpretation of the word *"keiki,"* is as follows:

"* * * And after the death of Kanehiwa (k), Hoomalu (w), Kaleipualiilii (w), Eva Kapualanilehua (w), and Lukela (k), I direct my Trustee to equally divide all of my estate among the heirs of their body. Provided, however, should any of them, that is, Kanehiwa (k), Hoomalu (w), Kaleipualiilii (w), Eva Kapualanilehua (w) and Lukela (k), die without *'keiki'*, then the heirs of the body of those above described shall receive the estate, which shall be equally divided among them."

By its bill the trustee requested to be instructed to

whom and in what shares the trust corpus should be distributed.

The trial court construed the trust to provide for a stirpital distribution among the surviving descendants of the named income beneficiaries. Two separate appeals have been taken from the holding.

One of the appellants, Magoon Estate, Ltd., contends that under a proper construction of the will, a child of an original life beneficiary acquired an indefeasibly vested remainder interest in the corpus upon his birth or at least upon the death of his parent. By mesne conveyances, Magoon Estate acquired all the right, title and interest in the trust estate of Esther K. Victorino who was the only child of Kanehiwa. She died in 1955. Her father, Kanehiwa, died in 1937. Magoon Estate's position is that it takes a share of the corpus of the estate to the exclusion of a surviving son of Esther Victorino.

The other appellants, appealing jointly, are the seven surviving children of Hoomalu and the representatives of the estate of one of Hoomalu's children who died after the death of Lukela. They contend that the will provides for either a per capita distribution among the descendants of the original life beneficiaries or for a distribution limited to the blood children of such beneficiaries. Another child of Hoomalu died in 1958 leaving three children. They contended in the lower court for a per capita distribution. As appellees in this court they argue, with the three remaining individual appellees (a son of Lukela, a son of Kaleipualiilii and a grandson of Kanehiwa) to sustain the judgment entered below. (Eva Kapualanilehua died without issue a few years after the inception of the trust.)

An incidental point raised below was whether an illegitimate child of a daughter of one of the named life beneficiaries could claim through his mother. The trial court's

ruling on the point was that he could not. However, that issue is not before us as the respondent adversely affected by the particular ruling has not appealed.

With the deletion of the portions pertaining to the ruling on the status of the illegitimate child, the trial court's decision is set out hereunder.

"This action was brought by Bishop Trust Company, Limited, Trustee under the Will and of the Estate of Kaleipua Kanoa, Deceased, requesting instructions as to the proper distribution of the corpus of the trust estate.

"The facts are not in dispute. Kaleipua Kanoa executed her will, written in the Hawaiian language, on September 17, 1897 and died four days after. She was survived by all of the five named initial income takers, namely, Kanehiwa, Hoomalu, Kaleipualiilii, Eva Kapualanilehua, and Lukela. At the time of the death of the testatrix, Kanehiwa was an adult and the other four were minor children. Lukela was 5 years of age, Kaleipualiilii 12, and Hoomalu 15. Eva Kapualanilehua's date of birth is not known. From the terms of the will, Eva Kapualanilehua was evidently a minor child like the other three. All five of the named initial income takers are now deceased, Lukela, the last survivor, having died on March 29, 1962.

"Kanehiwa died on August 28, 1937, survived by his sole blood child Esther Kaleipua Kanehiwa Victorino (hereinafter referred to as Esther). Esther conveyed her interest in the Kanoa trust estate to Marmion M. Magoon by an instrument dated January 26, 1928, which interest was subsequently assigned by Marmion M. Magoon to the Trustees of the Emmeline M. Magoon Trust and in turn assigned to Magoon Estate, Limited (hereinafter referred to as Magoon Estate). * * *

"Hoomalu (whose married name was Mrs. Charles

Kreuter) died on April 16, 1945 and was survived by nine children. One of the children, Walter Kreuter, died on October 8, 1958 and was survived by three children, namely, Walter Lloyd Kreuter, Frances Kreuter Cotton, and Marshall Winston Kreuter, all of whom are still living. Norman Francis Kreuter, another son of Hoomalu, died on March 29, 1962, about three hours after Lukela's death.

"Kaleipualiilii (also known as Kaleipualiilii Aylett), sister of Lukela, died on August 3, 1954 and was survived by one child, Simeon Aylett, who is still living.

"Eva Kapualanilehua, whose date of death is unknown, died without issue.

"Lukela (also known as Lukela Kaupiko) died on March 29, 1962 and was survived by one child, John D. Kaupiko, Jr., who is still living.

"In her will, the testatrix created a testamentary trust of her residuary estate. Although the present proceeding is concerned with the distribution of the corpus, it will be helpful in construing the will to consider both the income and the corpus provisions. The portion of the will of Kaleipua Kanoa containing the income and the corpus provisions, as translated (except for the disputed word *'keiki'*, which has been translated and construed as 'issue' in the prior proceeding), is as follows:

" 'And after the death of Kaupiko (k) and Kaluaihalawa (k), and the attainment of majority by Hoomalu (w), Kaleipualiilii (w), Eva Kapualanilehua (w), and Lukela (k), I direct my Trustee to equally divide all of the income from my estate among Kanehiwa (k), Hoomalu (w), Kaleipualiilii (w), Eva Kapualanilehua (w) and Lukela (k), and should any of them die without *"keiki"*, then the portion of the income of the one who died with-

out *"keiki"* shall be equally divided among the survivors, but if any of them die leaving any *"keiki ponoi"* surviving, then the portion of the one who died shall be divided among the *"keiki"* who are living. And after the death of Kanehiwa (k), Hoomalu (w), Kaleipualiilii (w), Eva Kapualanilehua (w), and Lukela (k), I direct my Trustee to equally divide all of my estate among the heirs of their body. Provided, however, should any of them, that is, Kanehiwa (k), Hoomalu (w), Kaleipualiilii (w), Eva Kapualanilehua (w) and Lukela (k), die without *"keiki"*, then the heirs of the body of those above described shall receive the estate, which shall be equally divided among them.'

"In the prior proceeding in this case involving the distribution of certain trust income, the Court held that the testamentary trust under the will of Kaleipua Kanoa created successive life interests in the trust income in favor of any and all lineal descendants of the five named initial income takers on a per stirpes basis with rights of representation in each generation, subject to the termination of the trust. The trust having terminated upon the death of Lukela, the last survivor of the named initial income takers, this Court is now being requested to determine the distributees of the trust corpus and their respective interests.

"The specific issues presented for determination are: First, whether the corpus takers are to be ascertained at the termination of the trust or at some other time or times; second, whether the term 'heirs of the body' means lineal descendants or only immediate children; third, whether the distribution of the trust corpus is on a per stirpes or per capita basis; and fourth, whether the corpus takers include both illegitimate as well as legitimate heirs of the body. In view

of this Court's conclusion, it will not be necessary to rule on the question as to whether a spendthrift trust was created.

"Of the seven respondents, to wit, Manuel Victorino, Joseph Kanehiwa, Magoon Estate, Simeon Aylett, John D. Kaupiko, Jr., the eight children of Hoomalu (including the estate of Norman Francis Kreuter, said eight children being considered as one party), and the three grandchildren of Hoomalu (children of Walter Kreuter, deceased, said three grandchildren being considered as one party), six contend that the heirs of the body of the named initial income takers are ascertained at the termination of the trust, while Magoon Estate contends that each child of the named initial income takers acquired an indefeasibly vested interest in the trust corpus upon his or her birth. Magoon Estate and the eight children of Hoomalu contend further that the meaning of the term 'heirs of the body' is limited to the immediate children of the named initial income takers, while the other respondents contend that 'heirs of the body' has been used in its ordinary sense of lineal descendants. As to the basis of distribution, five respondents (representing the three stirpes of Kanehiwa, Kaleipualiilii, and Lukela) contend for the per stirpes distribution, while the respondents representing Hoomalu contend for the per capita distribution. * * *

"Based on an examination of the whole will and general plan of distribution and the undisputed facts, this Court finds that the trust corpus should be distributed to the heirs of the body, or lineal descendants, of the named initial income takers living at the termination of the trust on a per stirpes basis with rights of representation in each generation, such takers being limited to only legitimate heirs of the body.

"The whole testamentary plan of the testatrix has

been previously summarized as follows:

"'In looking at the whole will, there is absolutely no doubt that the testatrix was extremely fond of Kanehiwa, Hoomalu, Kaleipualiilii, Eva Kapualanilehua, and Lukela. This is evident in her will because she refers to four of them as her "foster children" and as her "heirs" and puts Kanehiwa in the same class. In addition, she bestowed more valuable gifts on them, their "keiki", and their heirs than on either her father or brothers. In essence, a long term family trust was created by the testatrix since all but one of the initial beneficiaries were minor children. The initial beneficiaries were clearly given a life estate and then the testatrix created intermediate estates in their respective surviving "keiki" by way of representation until termination of the trust, with a gift-over in the event of default of "keiki". Upon the death of the last initial income beneficiary, the trust will terminate and the trust estate will be distributed among the heirs of the body of the initial five income beneficiaries equally. If one would have to choose which class of beneficiaries were the most beloved in the mind of the testatrix the conclusion would necessarily have to be the first takers, and yet she merely gave them a life estate. The gift-over provision in the event an initial taker dies without surviving "keiki" is an important clue to testamentary intent in that it would be contrary to usual testimentary intent to provide for a gift-over if an initial taker died without an immediate child surviving but with a more remote surviving descendant, Restatement of Property, Vol. III, 285 (f) ; and the language requiring survival also indicates an intent to benefit living issue regardless of the degree.' (Decision of April

28, 1961, pp. 8, 9, in Equity No. 2012).

"It is clear from the foregoing plan that there may be one or more successive life estates in the trust income intervening between the time an initial income taker dies and the termination of the trust. The rule is well settled in this jurisdiction that where the gift in trust to a class is postponed until the termination of a preceding estate, the takers are ascertained as of the date of such termination. Accordingly, the heirs of the body of the named initial income takers are ascertained in the instant case at the termination of the trust. *Trust Estate of George H. Holt, Deceased,* 42 Haw. 129 (1957); *Re Trust of Dreier,* 32 Haw. 32 (1931); *Crescent City Motors* v. *Nalaielua,* 31 Haw. 418 (1930); *Auld* v. *Andrade,* 31 Haw. 1 (1929). This rule as enunciated by our Supreme Court is as follows:

" 'It seems to us to be the natural and obvious meaning of the language used that only those children should take under the later clause or part now being considered who should be surviving at the death of the niece, she dying without having had issue. This is also in conformity with the ordinary rule often laid down that "where under the provisions of the will a gift to a class is postponed either to a particular time or pending the termination of a preceding estate, * * * * those members of the class, and those only, take who are in existence at the arrival of the time for distribution, as at the death of the life-tenant, unless the particular language used confines the gift to those in existence at the testator's death, or who are in existence at the date of the will." 40 Cyc. 1477-1479.' *Auld v. Andrade,* 31 Haw. 1, 5 (1929).

"This conclusion is corroborated in many other ways. It is reinforced by the requirement of survival

in both the income and the corpus provisions. 5 *American Law of Property*, Sec. 22.60, p. 439; 2 *Powell on Real Property*, Sec. 327, p. 718. The gift over in the event any of the named initial income takers should 'die without *keiki*' gives further support to this conclusion. See 3 *Powell on Real Property*, Sec. 343, p. 41; 4 *Page on Wills (Bowe-Parker Revision)*, Sec. 35.10, p. 521; *Estate of Isenberg*, 28 Haw. 590, 649 (1925). Also, the per stirpes distribution which is being adopted herein implies a requirement of survival to the end of the postponed period. 5 *American Law of Property*, Sec. 21.13, p. 147.

"Additionally, it complements the time of determining the income takers. See *Peters and McLean v. Vannatta*, 41 Haw. 249, 267 (1955); *In the Matter of the Trust Estate of Richard Meek, Deceased*, 42 Haw. 335, 350 (1958); *The First Trust Company of Hilo, Limited v. Roy*, 29 Haw. 474, 481 (1926); *Trust Estate of George H. Holt, Deceased*, 42 Haw. 129, 135 (1957). Applying the rule established in the cases cited, since the successive income takers are determined at the termination of the preceding life estate, the corpus takers are logically to be ascertained at the termination of the trust.

"The construction claimed by Magoon Estate for an indefeasibly vested interest upon birth of a child would result in the share of corpus being distributed to the general heirs (including the spouse) of a child dying intestate before the termination of the trust, contrary to the terms of the will, which provides that the corpus shall be distributed after the death of all of the initial income takers to the heirs of their body, and not to the heirs or heirs of the body of anyone else. See *Crescent City Motors v. Nalaielua*, supra, at 423; 3 *Powell* on

*Real Property,* Sec. 373, p. 210.

"Accordingly, it is abundantly clear that only heirs of the body of the initial income takers surviving at the termination of the trust are entitled to share in the distribution of the corpus.

"The next question concerns the meaning of *'hooi-lina o ke kino',* the undisputed translation of which is 'heirs of the body.' The ordinary meaning of 'heirs of the body' is lineal descendants of a named person who can take under the statute. It has a biological overtone which excludes a wife or husband and also adopted children. 5 *American Law of Property,* Sec. 22.59, pp. 428-429; 3 *Powell on Real Property,* Sec. 373, pp. 209-211. It can also be construed as 'children' where additional language or circumstances so indicate. 3 *Powell on Real Property,* Sec. 373, p. 211.

"It seems fairly obvious to the Court that the testatrix used the term 'heirs of the body' in the corpus provision in its ordinary and primary sense of lineal blood descendants and not in the limited sense of immediate children, for there is nothing in the will to indicate that the testatrix meant to disinherit grandchildren and more remote issue of the initial income takers upon the mere accident of the initial income takers having no children but only grandchildren living at their death. See 5 *American Law of Property,* Sec. 22.32, p. 321; *Steward v. Knight,* 62 N.J. Eq. 232, 49 Atl. 535 (1901). The gift over in the event an initial income taker dies without *'keiki'* is an important clue to testamentary intent in that a testator is unlikely to intend the gift over to be effective if the designated parent dies survived by descendants but not survived by children. 3 *Restatement Property,* Sec. 285 (f). The testatrix in the instant case had no reason to favor the

children of the initial income takers as against the grandchildren, for with the exception of Kanehiwa all of the other four initial income takers were themselves minors. In view of the fact that nothing appears to indicate a different intention, it must be presumed that 'heirs of the body' was used in its ordinary sense. *Peters and McLean v. Vannatta,* supra, at 257.

"Words such as 'heirs' and 'heirs of the body' are appropriate for an ultimate limitation because they are the least likely of all group designations to fail for want of persons complying with the description. Casner, *Construction of Gifts to 'Heirs' and the Like,* 53 Harvard Law Review 207. In addition, *'hooilina o ke kino'* evidently served as the counterpart to *'keiki ponoi'* found in the income provision. The term *'keiki ponoi'* has been defined by our Supreme Court as 'a child of the blood or the issue of its parents.' *O'Brien v. Walker,* 35 Haw. 104, 139 (1939). As used in the will, it seems that *'keiki'* and *'keiki ponoi'* were intended to have the same meaning and effect and denoted the blood issue of the initial income takers, as did 'heirs of the body'. Consistent with this construction is the primary Hawaiian translation of 'issue', which is either *'keiki'* or *'keiki ponoi'.* See Andrews, *A Dictionary of the Hawaiian Language* (1865) 535; Hitchcock, *An English-Hawaiian Dictionary* (1887) 120; Judd-Pukui-Stokes, *Introduction to the Hawaiian Language* (1945) 115.

"The contention made by two of the respondents that *'keiki'* denoted children, based on its popular usage, and that 'heirs of the body' was also used to mean children does not seem to this Court to be well taken. The word *'keiki'*—as the word *'aloha'*—has several English meanings, and its meaning in any partic-

ular instance depends on the context in which it is used. In the context of the corpus provision in the will, *'keiki'* is susceptible of two meanings, to wit, 'children' and 'a descendant of any generation.' See Andrews, *A Dictionary of the Hawaiian Language (Revised by Henry H. Parker—1922)* 280. It is apparent to the Court that the testatrix used *'keiki'* here in the inclusive sense of 'a descendant of any generation,' for if the testatrix had intended 'heirs of the body' to mean *'keiki'* in the limited sense of children, there would have been no reason to bring in 'heirs of the body' to denote children and the testatrix instead would have continued to use *'keiki'*. The shift to the all-inclusive concept of 'heirs of the body' is, therefore, very significant and clearly indicates that it was intended to denote all lineal descendants. This meaning is synonymous with the statutory definition of 'issue', the primary Hawaiian translation of which, as pointed out above, is *'keiki'* and *'keiki ponoi'*. See *Revised Laws of Hawaii 1955,* Sec. 318-1.

"The structure of the corpus provision also shows that *'keiki'* was assimilated to 'heirs of the body', instead of vice versa, and took on the same all-inclusive meaning and quality. Thus construed, all of the terms descriptive of beneficiaries under the will, *'keiki'* in the income and corpus provisions as well as 'heirs of the body', are given a consistent and harmonious meaning.

"Furthermore, restricting 'heirs of the body' to the immediate children of the initial income takers under the construction postponing the ascertainment of heirs of the body to the termination of the trust would cause an intestacy of the trust estate where all of the initial income takers left only grandchildren but no children surviving. This result would be contrary to the pre-

sumption that the testatrix had disposed of all of her property under her will. See Sec. 322-12, Revised Laws of Hawaii 1955, *Presumption Against Intestacy.*

"The contention, also, that if the testatrix had meant lineal descendants she would have used *'moopuna'*, *'mamo'*, or *'hooilina'* is similarly unpersuasive to the Court, for the reason that those terms include either adopted children or collateral heirs, or both, who would be precluded by *'keiki ponoi'* and *'hooilina o ke kino'.* By the use of the terms *'keiki'*, *'keiki ponoi'*, and *'hooilina o ke kino'*, the testatrix selected a precise combination of terms to describe the particular type of takers she had in mind, to wit, own or blood issue of the named. initial income takers to the exclusion of collateral heirs and adopted children.

"Accordingly, this Court finds that the terms 'heirs of the body' and *'keiki'* were both used in the corpus provision in the all-inclusive sense of lineal descendants and not in the restricted sense of immediate children. In view of the Court's construction of 'heirs of the body' and *'keiki'*, the cases involving the English word 'children', such as *Wodehouse v. Robinson,* 27 Haw. 462 (1923), and *In the Matter of the Estate of Hartwell,* 23 Haw. 213 (1916), are not applicable.

"With respect to the manner of distributing the corpus, that is, whether per stirpes or per capita, this Court finds that the general testamentary plan clearly bespeaks per stirpes, in line with the prior decision on the distribution of income. The same regard and esteem evinced by the testatrix for each of the five named stirpes when she first gave them an equal life interest in the trust income, followed by successive life interests on a per stirpes basis to the issue of any deceased parent, should also be carried over to the corpus. The

fact that the income is distributable per stirpes is sufficient ground for presuming a like distribution of the corpus. *Peters and McLean v. Vannatta,* supra, at 267; *In the Matter of the Trust Estate of Richard Meek, Deceased,* supra, at 350; *The First Trust Company of Hilo v. Roy,* supra, at 481; see also *Trust Estate of George H. Holt, Deceased,* supra, at 135. In the instant case, a per capita distribution would defeat the harmonious and equal plan of distribution established by the testatrix.

"The gift over provision is further indication pointing to the per stirpes distribution, for if the testatrix had intended a per capita distribution, there would have been no reason for including a gift over. Also, the direction to distribute the corpus to the 'heirs of the body' imports a per stirpes distribution, as that term implies a reference to the statute of descent and distribution, which, in turn, provides a taking per stirpes. 4 *Page on Wills (Bowe-Parker Revision),* Sec. 36.15, p. 569; see also *Peters and McLean v. Vannatta,* supra, at 266. If there is any doubt, the rule in this jurisdiction resolves it in favor of a taking per stirpes rather than per capita. *Peters and McLean v. Vannatta,* supra, at 265.

"The only possible impediment to the per stirpes construction might be the presence of the word 'equally' in the corpus provision. From the context of the whole will it is clear to this Court that by the use of the word 'equally' the testatrix intended an equality among the five named stirpes, that is, each family would have an equal portion of the trust corpus in the same way that the income was distributed. Where there are two or more families, as in the instant case, words of equality apply to the several families and those class members

who are the children of one life tenant take only the share of their parent. 3 *Powell on Real Property,* Sec. 368, p. 182; *Peters and McLean v. Vannatta,* supra, at 266.

"Under the per capita construction, all surviving grandchildren and more remote issue of the named initial income takers should logically be allowed to take equally with the surviving immediate children. This result would seem to foreclose the per capita distribution, for it could hardly be supposed that the testatrix intended to give an equal share of the corpus to the surviving grandchildren and children of a particular initial income taker. Hence, under all of the circumstances, it does not seem to this Court that the presence of a single ambiguous word justifies a per capita distribution. The per stirpes distribution, on the other hand, is not only harmonious with the income distribution but also conforms more closely than the per capita distribution to the intent commonly prevalent among testators similarly situated. See 5 *American Law of Property,* Sec. 22.62, p. 450.

\*      \*      \*      \*      \*      \*      \*      \*

"Based on the foregoing reasons, this Court finds that under the will of Kaleipua Kanoa the trust corpus should be distributed to the legitimate heirs of the body, or lineal descendants, of the named initial income takers surviving at the termination of the trust on a stirpital basis with rights of representation in each generation.

"Accordingly, the Court instructs the Trustee to distribute the trust estate of Kaleipua Kanoa as follows:

    (1) One-fourth (¼) share unto Manuel Victorino, sole surviving legitimate grandchild and heir

of the body of Kanehiwa.

(2) One-fourth (¼) share unto Simeon K. Aylett, sole surviving child and heir of the body of Kaleipualiilii.

(3) One-fourth (¼) share unto John D. Kaupiko, Jr., sole surviving child and heir of the body of Lukela (also known as Lukela Kaupiko).

(4) One-fourth (¼) share to be divided by the heirs of the body of Hoomalu (Mrs. Charles Kreuter) as follows:

1/9 of 1/4, or 1/36 part, each to the surviving children of Hoomalu, to wit, Charles Louis Kreuter, Oscar Kreuter, Harry Kreuter, Donald Raymond Kreuter, Louise Hoomalu Fisher, Wallace Kreuter, and Lorna Lydia West, and to the estate of Norman Francis Kreuter, deceased.

1/9 of 1/4, or 1/36 part, to be divided equally by the three children of Walter Kreuter, deceased, to wit, Walter Lloyd Kreuter, Frances Kreuter Cotton, and Marshall Winston Kreuter, or 1/108 part to each of said three children.

"An order instructing and directing the Trustee in accordance with the foregoing decision will be signed upon presentation."

We fully agree with the trial court's holding and with the basic reasoning upon which it is founded. The decision is adopted as the opinion of this court.[1]

---

[1] The decision of the court below did not consider the alternate contention of Magoon Estate, Ltd., apparently made for the first time in this court, that Esther Victorino acquired an indefeasibly vested remainder interest in the corpus upon the death of her parent, Kanehiwa, in 1937. However, this additional contention adds nothing to that appellant's case as it is also disposed of by our adoption of the trial court's holding that "the heirs of the body of the named initial income takers are ascertained in the instant case at the termination of the trust."

Judgment affirmed.

*Paul F. Cronin* (*Pratt, Moore, Bortz & Vitousek* of counsel) for Charles Lewis Kreuter, et al., respondents-appellants in No. 4363.

*William H. Dodd* and *Herbert Y. C. Choy* (*Fong, Miho, Choy & Robinson* of counsel) for Magoon Estate, Ltd., respondent-appellant in No. 4364.

*F. D. Padgett* (*Robertson, Castle & Anthony*) for Bishop Trust Co., Ltd., petitioner-appellee, neither filed a brief nor argued.

*Robert G. Dodge* (*Heen, Kai & Dodge* of counsel) for John D. Kaupiko and Simeon K. Aylett, respondents-appellees.

*Eichi Oki* (*Vincent H. Yano* of counsel) for Manuel Victorino, respondent-appellee.

*Harry T. Tanaka* (*Yamaguchi & Tanaka* of counsel) for Walter Lloyd Kreuter, et al., respondents-appellees.