Zimmerman, J.
 

 A decision in this case turns upon the interpretation to he given the word “heirs” as used by Enoch Miller in the fifth item of his will.
 

 Applicable here is the language of this court in
 
 Weston
 
 v.
 
 Weston,
 
 38 Ohio St., 473, 478, as follows:
 

 “We readily concur in the proposition * * * that the term
 
 heirs,
 
 when used in a will, is' flexible, and should be so construed as to give effect to the manifest intention of the testator as ascertained by a due consideration of all the provisions of the will. But this proposition in no wise conflicts with the well-established rule of construction, that technical words used in a will should have their strict technical meaning, unless it appears that the testator used them in some other and secondary sense.”
 

 In other words, if a doubt exists as to whether the testator intended to use the word “heirs” in any other than its' usual technical sense, that interpretation should be given to it.
 

 The appellants herein are insistent that “heirs” should be interpreted as excluding the widow of John Miller, because that must have been the intention of Enoch in view of the general conditions, both factual and legal, existing at the time his will was executed and when he died. The appellee is' just as insistent that the testator used “heirs” in such a way as to denote those persons, whoever they might be, wiio
 
 *421
 
 should answer that description in relation to John Miller at his death, and hence the term must be accepted in its technical sense.
 

 Analyzing Item 5 as an abstract proposition, it plainly limits John’s interest to a life estate and vests the fee in the class composing his heirs at his death. Section 10504-70, General Code (formerly Section 10578, General Code, and Section 5968, Revised Statutes).
 

 A reading of the entire will fails to throw any light on the precise meaning the testator intended to ascribe to the word “heirs,” and in this respect the instant case differs from
 
 Cultice
 
 v.
 
 Mills,
 
 97 Ohio St., 112, 119 N. E., 200.
 

 "We must assume that Enoch Miller intended to say what he did say, and that he appreciated the legal effect and import of the words used. He must also be charged with knowledge that the persons who would be John’s heirs at his' demise might be entirely different from those who were his prospective or presumptive heirs when the will was executed, either through natural processes or by legislative enactment. Had Enoch meant John’s children, or those of his blood, by the use of the word “heirs,” it would have been easy enough for him to have said so and the difficulty would be solved. But he did not, and the intention of a testator is to be ascertained from what he has forborne to say as well as from what he has said. In short, Enoch Miller’s intention in the employment of the word “heirs” is doubtful, and in such a situation that term is to be interpreted in its usual technical sense.
 
 Smith
 
 v.
 
 Hunter, Trustee,
 
 86 Ohio St., 106, 99 N. E., 91.
 

 Who, then, were John Miller’s heirs upon his' death in June of 1936? This court has indicated on several occasions that in its technical sense the term “heirs” embraces those who take the estate of an intestate under the statute of descent and distribution, and in
 
 *422
 
 the event such statute designates the widow, she takes as an heir.
 
 Weston
 
 v.
 
 Weston, supra; Durfee
 
 v.
 
 MacNeil,
 
 58 Ohio St., 238, 244, 50 N. E., 721, 722;
 
 Miller
 
 v. Miller, 77 Ohio St., 643, 84 N. E., 1130 (affirming the judgment of the Circuit Court in 9 C. C. [N. S.], 242, 19 C. D., 451);
 
 Cultice
 
 v. Mills,
 
 supra
 
 (97 Ohio St., 112, 120, 119 N. E., 200, 202).
 

 Since January 1,1932, there has been but one statute in Ohio pertaining to descent and distribution, designated as Section 10503-4, General Code. It is applicable here, and the pertinent part provides:
 

 “When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this' state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course: * * *
 

 “3. If there be a spouse and more than one child, or their lineal descendants, surviving, one-third to the surviving spouse and the remainder to the children equally, or to the lineal descendants of any deceased child, per stirpes.”
 

 If a widow were capable of being her deceased husband’s heir under the laws existing prior to the advent of the New Probate Code, how much more tenable is her position in that regard now. The distinction between ancestral and non-ancestral property and between personal property and real estate has been removed, and the surviving spouse presently takes his or her share of the estate, after the payment of debts, under the statute of descent and distribution the same as children and other heirs at law.
 

 Counsel for the appellants have cited the case of
 
 Miller
 
 v.
 
 Miller, Admr.,
 
 129 Ohio St., 230, 194 N. E., 450 (49 Ohio App., 220, 197 N. E., 134), as tending to support their contention that the appellee cannot be classed as an heir of John Miller. That case is not at all decisive of the question under consideration, deal
 
 *423
 
 ing as it does solely with the significance of Sections 10504-60, 10504-55 and 10503-4, General Code, in relation to a widow who died before accepting or rejecting the will of her deceased husband.
 

 Finding no error in the judgment of the Court of Appeals, it is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Day, Williams, Myers and Gorman, JJ., concur'.