Taft, J.
The words of item 11 of the testator’s will which require construction are:
“In case of the death of my * * * daughter * * * leaving no children, then such * * * trust estate shall be divided among my heirs at law.”
It is arguable that, by the provisions of the will, the testator intended that the “children” of his daughter should take in the event that any survived her. See Restatement of the Law of Property, Section 272 and Comments a and f. However, no serious contention is made that the son, adopted by the testator’s daughter long after the testator’s death, is described by the word “children” in the foregoing-quoted portion of the testator’s will. See Albright v. Albright, 116 Ohio St., 668, 157 N. E., 760; Restatement of the Law of Property, Section 287; Third National Bank & Trust Co., Trustee, v. Davidson, ante, 355, 360; Flynn, Admr., v. Bredbeck, 147 Ohio St., 49, 68 N. E. (2d), 75.
The question then is whether the daughter’s adopted son is entitled to take under the words “my heirs at law” used by the testator in the portion of item 11 of his will quoted at the beginning of this opinion.
Testator’s daughter was actually his sole heir at law when testator died in 1924. Therefore, if the testator’s actual heirs at law at his death are described by the words “my heirs at law,” then, when the daughter died without leaving children, her estate became entitled to the trust assets. Then, her adopted son could claim them from her. See Hull v. Adams, 399 Ill., 347, 77 N. E. (2d), 706.
However, appellants contend that, since the testator specifically gave his daughter only a life interest in the trust estate, he thereby expressed an intention that she should be excluded from the class “my heirs *559 at law” to whom the trust assets were to go on the happening of the contingency, i. e., the death of the daughter “leaving no children.” Wilberding, Admr., v. Miller, 90 Ohio St., 28, 37, 106 N. E., 665; Jones v. Lloyd, 33 Ohio St., 572. But see annotations at 13 A. L. R., 616, 20 A. L. R., 356, 30 A. L. R., 916, and 61 A. L. R., 1012. If that contention is sound, then it would follow that, since the brothers and sisters of the testator would have been recognized under the statutes of descent and distribution as the heirs of the testator, if he had had no daughter living when he died, they would be testator’s “heirs at law,” if such heirs are determined as of the date of the testator’s death.
In the instant case we do not deem it necessary to determine whether that contention is sound. If it is not sound, then it is obvious that the appellants are entitled to nothing under the words “my heirs at law” in item 11 of the testator’s will, if such heirs are to be determined as of the date of the testator’s death.
If we assume that the testator did so express an intention to exclude his daughter from the class “my heirs at law,” then the question is whether he thereby expressed an intention that his “heirs at law” should not be determined at his death, but instead should be those who would have been his heirs (a) if he had died when his daughter died in 1946, and (b) if the statutes then in effect, instead of those in effect at his death, had been applied. If the testator had actually died in 1946, then Robert Millis, who was adopted by testator’s daughter in 1942, would now be the sole heir of the testator. Flynn v. Bredbeck, supra.
A testator’s “heirs at law” can actually be determined only at the time of his death. Thus, if the words “my heirs at law” in a testator’s will are given their ordinary meaning, they will necessarily describe those who are actually the testator’s heirs. "Who they *560 are will necessarily be determined by the law in effect at the testator’s death. The problem still remains however whether, by what he said in his will, the testator in the instant case expressed an intention that their ordinary meaning should not be given to the words “my heirs at law” but, instead, his heirs should be determined on the assumption that he died at some time other than the time when he did actually die.
If, as we have assumed for the purposes of this opinion, the testator did express an intention that his daughter should be excluded from the class “my heirs at law,” then it is apparent that, by expressing an intention that his daughter, who would probably be and actually became his sole heir at law, should be so excluded, the testator probably did not intend to give their ordinary meaning to the words “my heirs at law.” Thus, that expression of intention tends to show that, in using the words “my heirs at law,” testator had in mind the determination of his heirs at his daughter’s death, when for the first time she could not be his heir, instead of at his death, when she would be his sole heir at law. See Comment k under Section 308, Restatement of the Law of Property. See annotations at 49 A. L. R., 174, and 127 A. L. R., 602.
There was nothing in the will in the instant case to rebut that tendency as there was in the will in Wilberding v. Miller, supra.
If we assume that testator did intend to exclude his daughter from the class “my heirs at law,” then there is another factor which tends to show that the testator probably had in mind the determination of his heirs as if he had died at the time of his daughter’s death instead of at the time when he did die. At the time of the testator’s death, his daughter was only 19. His will clearly indicates that he foresaw that she might marry and have children. Presumably he foresaw that her children might also have children, and that *561 her children might predecease her bnt that her grandchildren might survive her. If his ‘ ‘ heirs at law ’ ’ were determined at the date of his death and his daughter was excluded from being his heir, then the provision for his “heirs at law” might benefit his brothers and sisters or their descendants but could never benefit any children of his daughter’s children. There is nothing in the will to indicate any intention to prefer descendants of his brothers and sisters over his own direct blood descendants. Presumably he would intend otherwise.
The foregoing factor was not present in Ohio National Bank of Columbus, Trustee, v. Boone, 139 Ohio St., 361, 40 N. E. (2d), 149, 144 A. L. R., 1150. Likewise, in that ease there was nothing in the will which might have justified the conclusion, that the testator intended to exclude from taking as his “heirs” anyone who would have been his heir at the time of his death. Furthermore, this court in the Boone case stressed the fact that the remainder to the “heirs” there involved was a vested remainder (Cf. Barr v. Denney, 79 Ohio St., 358, 87 N. E., 267) and that the law favored the vesting of estates at the earliest possible moment. In the instant case, the provision for the testator’s “heirs at law” is obviously a contingent interest, inasmuch as it can come into existence only by reason of the event, which was definitely uncertain at the time of the testator’s death, of the decease of his daughter “leaving no children.” See King v. Beck, Admr., 15 Ohio, 559, 563, 564.
Our conclusion therefore is that, if the testator intended to exclude his daughter from his “heirs at law’’ as that term was used in item 11 of his will, then he intended that such “heirs” should be determined at the time of the death of his daughter in 1946.
Appellants contend that, if those “heirs” are determined at that time, those heirs should be deter *562 mined by applying the statutes of descent and distribution as in force in 1924 and not those in force in 1946.
We believe that prior decisions of this court require the conclusion that the statutes as in force in 1946 should be applied. Smith v. Hunter, Trustee, 86 Ohio St., 106, 99 N. E., 91; Holt v. Miller, 133 Ohio St., 418, 14 N. E. (2d), 409. See annotation, 139 A. L. R., 1107, 1111. See, also, Ohio National Bank v. Boone, supra, 364, 370. We recognize that, in both Smith v. Hunter, supra, and Holt v. Miller, supra, the question to be determined was the meaning of “heirs” with reference to a party other than the testator. In each instance, it was held that changes in the statutes of descent and distribution after the death of the testator should be applied in determining who were heirs at the time when heirs were to be determined, that is, at the time of the death of the party whose heirs were involved. On the other hand, heirs of the testator are involved in the instant case and they would ordinarily be determined by applying the statutes in force at the death of the testator. However, where, as here, the testator has in effect provided for a limitation to his heirs, to be determined as if he had died at some time later than his actual death, we believe that, if the testator intends that such heirs should be determined under statutes in effect at his death instead of at the time specified for their determination, his will should contain some expression of such an intention. Central Dispensary & Emergency Hospital v. Saunders, 165 F. (2d), 626. It is arguable that, since the testator cannot be familiar with the statutes of descent and distribution after his death, his expression of an intention to have his heirs determined at some time subsequent to his death does not justify the application of such statutes enacted after his death. However, such expression of intention certainly ex- *563 Mbits the same indifference to what those statutes may be at that time as where a testator makes provision for the heirs of other parties. Since testator’s daughter was only 19 at the time of his death, he must have known that the determination, as to who would eventually take under the words “my heirs at law,” might depend upon the happening of a large number of events over which he had no control. There is no reason to infer that he intended to exclude a change in the statutes from the number of such events. See Holmes, Trustee, v. Alexander, 82 N. H., 380, 134 A., 536.
It is argued that the conclusion which we have reached will deprive a testator of protection against, changes which the Legislature may make in the statutes of descent and distribution after his death. The answer to such argument is that this testator might have provided in his will that his heirs should be determined by applying the statutes of descent and distribution in force at the time of his death. By merely expressing the intention that his heirs should be determined as if he had died at the time of the death of his daughter, we believe he has in effect expressed an intention that the same statutes of descent and distribution should be followed in determining who those heirs are as would be followed in determining the heirs of anyone who died at that time.
It is arguable that, by providing for his “heirs at law,” after providing for his “daughter” and her “children,” the testator intended to confine the words “heirs” to “heirs of his body.” Cf. Cultice v. Mills, 97 Ohio St., 112, 119 N. E., 200. However, in such an instance, there would be a reversion to the testator’s daughter as his sole heir at law; and that reversion would vest at the testator’s death. Gilpin v. Williams, 25 Ohio St., 283. Then, when testator’s daughter died without issue her adopted son would inherit that vested remainder from his mother.
*564 Since we do not believe that there is any theory upon which the claims of appellants to any part of these trust assets can be sustained, the judgment of the Court of Appeals must be affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Stewart and Hart, JJ., concur.
Middleton and Matthias, JJ., concur in the syllabus and in the judgment.