Tootle et al. *v.* Tootle, Appellant; Abbott et al., Appellees.

[Cite as Tootle *v.* Tootle (1986), 22 Ohio St. 3d 244.]

(No. 85-558—Decided March 19, 1986.)

*Vorys, Sater, Seymour & Pease, Lawrence L. Fisher, Clark E. Loofbourrow* and *Nancy E. Herrold,* for appellant.

*Huffer & Huffer Co., L.P.A.,* and *Robert H. Huffer,* for appellee Abbott.

*R. L. Brubaker,* for appellee Knisley.

LOCHER, J. The issue at bar is whether Thomas Abbott and Megan Abbott Knisley, although adopted, may inherit through or from their mother in a class gift. For the reasons to follow we hold that the adopted children may not inherit where the express intention of the testator is otherwise and, accordingly, we reverse the judgment of the court of appeals.

Ordinarily R.C. 3107.15(A)(2) places adopted children on the same footing as natural children:

"To create the relationship of parent and children * * * as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, *which do not expressly exclude an adopted person from their operation or effect.*" (Emphasis added.)

As the last portion of the section indicates, however, the status of adopted children is not unequivocal in those instances where exclusion is express.

While conceding that in 1925, when the will was executed, the term "heirs of the body" was commonly used to exclude adopted children, the court of appeals was singularly reluctant to accept the trial court's conclusions. Rather, the court of appeals analogized from *Tiedtke* v. *Tiedtke* (1952), 157 Ohio St. 554 [47 O.O. 411], wherein this court held in paragraph two of the syllabus:

"Where, in providing for his 'heirs at law' after a life interest, a testator indicates his intention that such heirs should be determined at the date of the expiration of such life interest, then the statutory law in effect at the expiration of such life interest should be applied in determining such heirs of the testator unless by the provisions of the will or surrounding circumstances a contrary intention is indicated, even though such statutory law will permit an adopted child of the testator's daughter to take and the statutory law in effect at the testator's death would not have permitted such adopted child to take and even though such adopted child was not either born or adopted until long after the testator's death."

The court of appeals reasoned that "heirs" or "heirs at law" are indistinguishable from "heirs of the body." This reasoning was applied notwithstanding G. C. 8030, in effect when the will was executed (109 Ohio Laws 179, 180), which expressly indicated that an adopted child "* * *

shall not be capable of inheriting property expressly limited to the *heirs of the body* of the adopting parent or parents." (Emphasis added.) We decline to adopt the court of appeals' view.

In *Alley* v. *Strickland* (1983), 279 S.C. 126, 302 S.E. 2d 866, the Supreme Court of South Carolina, under a statute wherein "an adopted child" is "considered a natural child of the adopting parents for all inheritance purposes * * *," *id.* at 127, held that a distinction had to be made between such terms as "heirs," predicated upon the statutes of descent and distribution, and "heirs of the body," a term of art used to limit remainders. Similarly, it has been held that the term "heirs of the body" is an expression that "* * * has a biological overtone which excludes a wife or husband and also adopted children." *In re Trust Estate of Kanoa* (1964), 47 Hawaii 610, 620, 393 P.2d 753, 759; Casner, Construction of Gifts to "Heirs" and the Like (1939), 53 Harv. L. Rev. 207, 222-223. There is a distinct difference between the term "heirs of the body" and the term "heirs at law" as used in *Tiedtke.* Moreover, both *Tiedtke* and the present R.C. 3107.15(A)(2) recognize the supremacy of the testator's intent over the judicial and legislative policy that adopted children be treated the same as natural children.

In our view there is no ambiguity in the will of Allen Evans as to the meaning of "heirs of the body." Unlike the court of appeals we cannot eschew the issue by suggesting that the meaning of technical terms of limitation in 1925, such as "heirs of the body," would change at some future period of time without specific legislative directive. Moreover, the term "heirs of the body" is not used interchangeably with "heirs," used in the residuary clause in Item Eighth of the will,[1] or "children," used in Item Second or Item Seventh of the will.[2] Additionally, the term "heirs of

---

[1] "Item Eighth. All the rest and residue of my estate of every kind and character and wheresoever situated shall go to and be divided between *my said four children,* share and share alike, or *the heirs of said children."* (Emphasis added.)

[2] "Item Second. I give, devise and bequeath to my beloved wife, Roxanna Evans both of my New Holland properties, being my residence property on West Street recently purchased by me from the sheriff of Pickaway County, Ohio, and known as the John and Edith Johnson property, and, the property on the north side of Front Street purchased by me from Emma L. Maddux, and my wife shall have full power and right to sell and convey the same, or any part thereof, if she so desires, but in the event my said wife does not sell or convey said property or any part thereof, during her lifetime, then I direct and authorize and empower my Executors hereinafter named, (after the death of my said wife), to sell said properties, or such part of the same as may not have been sold by my wife at either public or private sale, and upon such terms of credit or otherwise, as to them may be deemed just and proper, and make all necessary and proper deeds of conveyance therefor; and I direct that my said Executors shall divide and pay the net proceeds from any such sales made by them of my said New Holland properties to *my four children, share and share alike, and the children of any deceased child to take their parents*['] *share*; I also give to my said wife all of my household goods, furniture, beds, bedding and provisions and fuel which I may have in and around my said residence; I also give to my said wife the full one-third of all the rest and residue of my chattel and personal property of which I may die seized; I also give to my said wife the sum of

the body" was explicitly defined by G. C. 8030, as noted *supra*. The particular context of the term "heirs of their bodies" prefaced by the words "and then to" is also of value in ascertaining its use as a term of limitation. In the absence of contrary evidence, the use of the term "heirs of the body" in anything other than its former statutorily defined meaning is without legal justification.[3]

While we are mindful of, and sympathetic to, the legislative concern that adopted individuals be treated in most instances as if they were legitimate blood descendants, we are compelled to give effect to the testator's express intent. In *Townsend's Exrs.* v. *Townsend* (1874), 25 Ohio St. 477, this court stated in paragraph one of the syllabus:

"In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator."

This court reaffirmed the primacy of testator's intent in *Sandy* v. *Mouhot* (1982), 1 Ohio St. 3d 143, 144:

"The court's sole purpose in an action seeking construction of a will is to ascertain and carry out the intention of the testator. See, also, *Wills* v. *Union Savings & Trust* (1982), 69 Ohio St. 2d 382, 385 [23 O.O.3d 350]."

It is hornbook law, however, that technical terms in a will must be given their technical meaning and the testator will be presumed, absent differing intent, to be cognizant of that existing legal meaning. *Rehm* v. *Core* (App. 1948), 54 Ohio Laws Abs. 535; *Holt* v. *Miller* (1938), 133 Ohio St. 418, 420 [11 O.O. 85]. The term "heirs of the body" (or their bodies), under the circumstances of this case, is a term of limitation with respect to a class and in our view represents the kind of express exclusion recognized by R.C. 3107.15(A)(2).

---

Six hundred Dollars per annum to be paid to her quarter yearly, so long as she may live by my four children as hereinafter provided." (Emphasis added.)

"Item Seventh. I direct that my Executors hereinafter named shall sell and convey by a good and sufficient deed my 35 acres of land situated in Deerfield Township, Ross County, Ohio, and which is off the east end of the farm I bought of Riley Collins and which is bounded on the west by Merton Tootle and Son, Ackley, on the south by Clyde Tootle, on the east by the 177 acres hereinbefore given to Verna Tootle and Merton Tootle, and on the north by lands of Hamer Crabb and Mrs. Pierce, at either public or private sale and upon such terms of credit or otherwise, as in their judgment may be deemed best, — provided that said Executors shall first offer said land to my daughter, Verna Tootle and husband, Merton Tootle, at a price not exceeding $60.00 per acre, and said daughter and husband shall have the right to purchase said land at said price at any time within six months after my death, — and said Executors shall distribute the net proceeds from such sale between *my two daughters, Ada Dick and Bessie Terry, share and share alike, and if either should be deceased, then their children shall have the deceased parent's share.*" (Emphasis added.)

[3] Additionally, the appellate court hypothesized, without support, that the trial court "basically adopts the stranger-to-the-adoption rule" (for a discussion of the rule see *Weitzel* v. *Weitzel* [P.C. 1968], 16 Ohio Misc. 105 [45 O.O.2d 55]). We disagree with such an interpretation of the trial court's decision and expressly do not endorse, utilize, or adopt the stranger-to-the-adoption rule in today's decision.

Having accepted that "heirs of the body" is a term of limitation,[4] we must next determine when the class of contingent remaindermen closed. This is important because the contingent remainders in a life estate cannot become vested until the class is closed, *i.e.*, with the death of the final life tenant. *Casey* v. *Gallagher* (1967), 11 Ohio St. 2d 42 [40 O.O.2d 55]. The final life tenant, Verna Tootle, died in January 1983. Roxanna Tootle Abbott, however, had predeceased Verna before any interest could vest in her or her adopted children. Consequently, only Allen Tootle had a vested remainder after the class closed by virtue of Allen Evans' explicit instruction that the remainder interest go to the heirs of the bodies of his children. Further, even if we were to assume, *arguendo*, that Thomas and Megan succeeded to their mother's position by virtue of R.C. 2107.52, the anti-lapse statute, they still would not take because the statute may be avoided by sufficient expression of intent. *Shalkhauser* v. *Beach* (P.C. 1968), 14 Ohio Misc. 1 [43 O.O.2d 20]; Bensing, The Ohio Anti-Lapse Statute (1959), 28 U. Cin. L. Rev. 1, 29. Such intent, in view of our prior discussion, was manifested by the use of the term "heirs of their bodies" as a term of limitation. But, cf., *Flynn* v. *Bredbeck* (1946), 147 Ohio St. 49 [33 O.O. 243].

Accordingly, the adopted children could neither inherit through nor from their mother. We therefore uphold the trial court's decision and reverse the judgment of the court of appeals.

*Judgment reversed.*

CELEBREZZE, C.J., HOLMES and CONNORS, JJ., concur.

WRIGHT, J., concurs separately in the syllabus.

SWEENEY and DOUGLAS, JJ., dissent.

CONNORS, J., of the Sixth Appellate District, sitting for C. BROWN, J.

WRIGHT, J. concurring. The majority finds, and I agree, that Allen Evans' will reveals a general intention to benefit his natural children for their lives, and to further devise his property in his bloodline.

The court's function in a will construction case is to determine and apply the testator's intention as expressed from the language of the whole will, the general scheme of the disposition, and the circumstances surrounding its execution. One such circumstance is the original statutory

---

[4] While use of the term "heirs of the body" as words of limitation, and not of purchase, should be sufficient to exclude adopted children, the careful drafter would be advised to specifically set forth the intention that adopted children not take under the will, in as many words to avoid the possibility that the term could be misconstrued or taken out of its intended context.

setting. Under G.C. 8030, which was effective at the time of the execution of Allen Evans' will and at the time of his death, an adopted child was incapable of inheriting property expressly limited to the "heirs of the body" of the adopting parent or parents. Because Allen Evans' will employs the term suggested by statute, "heirs of their bodies," the logical and probable conclusion is that he intended to use the term in its traditional, common meaning to insure that his property passed to his natural descendants.[5]

The traditional meaning of "issue" and "heirs of the body" was lineal descendants by blood. *Casey* v. *Gallagher* (1967), 11 Ohio St. 2d 42 [40 O.O.2d 55]; *Third National Bank & Trust Co.* v. *Davidson* (1952), 157 Ohio St. 355 [47 O.O. 257]. Although the meaning of "issue" has been expanded to include adopted children, *Flynn* v. *Bredbeck* (1946), 147 Ohio St. 49 [33 O.O. 243], this trend has never affected "heirs of the body," which still means lineal descendants by blood. Therefore, the will herein, bequeathing a life estate in property to children and, on their death, to heirs of their bodies, manifested the testator's intention to limit the estate to the lineal blood descendants of such children. This construction excludes adopted children of the testator's granddaughter from taking her deceased parent's share.

---

[5] The testator's intention was formulated under a clear statutory and judicial rule that gradually evolved to a different state of law. G.C. 8030, effective August 5, 1921 (109 Ohio Laws 179-180), a part of the Adoption Act, provided:

"* * * [A]nd the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock; provided, such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents; * * *."

G.C. 10512-19 was enacted as part of the new Probate Code effective January 1, 1932. At that time, the following language was added to the provisions of what was formerly G.C. 8030: "* * * but shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs at law, or next of kin, of the adopting parent or parents, or to a class including any of the foregoing * * *." (114 Ohio Laws 474.)

A presumptive rule formerly existed in Ohio that an adopted child was deemed excluded from a class of beneficiaries when the testator was a stranger to the adoption and had not otherwise manifested an intent to include adopted children. *Third National Bank & Trust Co.* v. *Davidson* (1952), 157 Ohio St. 355 [47 O.O. 257]. Presently, R.C. 3107.15, effective January 1, 1977, creates a presumption of inclusion for adopted children unless affirmatively excluded by language in the instrument. It provides in pertinent part:

"(A) A final decree of adoption and an interlocutory order of adoption that has become final, issued by a court of this state, shall have the following effects as to all matters within the jurisdiction or before a court of this state:

"* * *

"(2) To create the relationship of parent and child between petitioner and the adopted person, as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted person from their operation or effect."

Neither Roxanna Tootle, nor anyone claiming through her, can now claim an interest in the trust corpus. When the testator died, the remaindermen acquired only a contingent interest in the realty. This interest could not vest until the life tenants, Verna and Merton Tootle, died because only at *that* time could their "heirs" be determined. Because Roxanna predeceased her mother, Verna, her contingent remainder never vested. Further, Roxanna left no lineal descendants who could claim directly as heirs of the body of Verna Tootle.

I agree with the majority that Ohio's anti-lapse statute, R.C. 2107.52, is inapplicable to the instant case, but for a different reason. R.C. 2107.52 preserves a gift in favor of heirs or descendants of persons who fall within the class description, and are alive at the date of the execution of the will, but predecease the testator. This statute does not operate where the class member survives the testator but dies before the date of vesting or distribution.

In the instant case, the testator's intention that his property be distributed only to those in his bloodline was sufficiently indicated to require his intention to be given effect.

Accordingly, I concur.

CONNORS, J., concurs in the foregoing concurring opinion.

DOUGLAS, J., dissenting. This court, by its decision today, has rendered R.C. 3107.15(A)(2) void of meaning and effect as a statute enacted to place adopted children in the same position in matters of inheritance as naturally born children. This is in direct conflict with the intent of the legislature.

Prior to January 1, 1977, Ohio's adoption statutes contained a provision which denied adopted children the right to inherit property limited to "heirs of the body." However, by omitting this provision from its enactment of R.C. 3107.15, Ohio's legislators removed the former restriction against adopted persons and finally afforded such persons the same rights to inheritance as natural born children.

This statute, in clear, concise and unambiguous language, needs no construction;or interpretation by this court, but should be applied to give full effect to its intent. Thus, pursuant to R.C. 3107.15(A)(2), unless an adopted *person* is *expressly* excluded from the operation or effect of a testator's will, he or she should benefit as if the adopted person were a legitimate blood descendant of the benefactor.

The remaindermen in this testator's (Evans') will were described not individually, but as members of a class, *i.e.*, the heirs of the body of the life tenants. As noted by the appellate court, "[a] gift to persons not individually named but conforming to a general description is usually a gift to those persons as a class." Thus, Evans' gift of the remainder interest to the heirs of the body of Merton and Verna Tootle, was a gift to a class of persons and not to a particular individual.

Although in 1925, the class of persons created by the term "heirs of the body" did not include adopted children, it is not necessarily valid to presume that the use of the term indicates Evans' intent to expressly exclude or bar adopted children who later, by operation of statute, become members of that class and thereby eligible to take under his will. While I agree with the majority that a testator is presumed to know the law, and that technical terms in a will must be given their technical meaning, our analysis cannot stop there. A testator is also presumed to know that the law is subject to change. Accordingly, as this court stated in *Holt* v. *Miller* (1938), 133 Ohio St. 418, at 421 [11 O.O. 85], "[h]e [the testator] must also be charged with knowledge that the persons who would be * * * [his] heirs at his demise might be entirely different from those who were his prospective or presumptive heirs when the will was executed, either through natural processes *or by legislative enactment.*" (Emphasis added.) Additionally, as this court held in relevant part in paragraph two of the syllabus of *Tiedtke* v. *Tiedtke* (1952), 157 Ohio St. 554 [47 O.O. 411], "* * * the statutory law in effect at the expiration of such life interest should be applied in determining * * * [the] heirs of the testator * * *, even though such statutory law will permit an adopted child of the testator's daughter to take and the statutory law in effect at the testator's death would not have permitted such adopted child to take and even though such adopted child was not either born or adopted until long after the testator's death."

By statutory enactment the legislature has changed the persons who are to be included within the term "heirs of the body." Without express language, excluding these adoptees, the application of R.C. 3107.15(A)(2) requires that Thomas Abbott and Megan Knisley take under this will as legitimate members of the class provided for by this will.

SWEENEY, J., concurs in the foregoing dissenting opinion.