HAWKINS, Presiding Justice,
for the Court:
Francis Malcolm Posey, Jr., and Eugene Bramlett Posey have appealed from a decree of the chancery court of Lafayette County holding in a partition action that Charles Sherman Posey, a lawfully adopted son of their natural parents, was a devisee under the Last Will and Testament of their late natural grandfather E.S. Bramlett, Jr., and therefore a tenant in common to land devised by Dr. Bramlett to their mother for life, with remainder to the “heirs of her body”.
Finding that the term “heirs of her body” excluded Charles Sherman Posey, we reverse and remand to the trial court for partition proceedings among the natural children.
*834 FACTS
E.S. Bramlett was a practicing physician in Lafayette County until his death on December 11, 1950. He owned realty in various parts of Oxford and the county.
He was married to Mrs. Janie Bramlett; five children were borne unto their marriage, namely: Eugenia Regan Bramlett McLaurin, Emmie Bramlett Posey, Eugene V. Bramlett (likewise a physician), Barney Troutman Bramlett and Julian Chandler Bramlett. On August 13, 1950, Dr. Bram-lett executed a will, naming his wife as executrix. He devised to Mrs. Bramlett their homestead realty, and 223 acres of realty in the county. He devised an undivided one-half interest in realty he owned in Oxford to his wife and children in equal shares. He devised to his children, to share and share alike, all realty he owned in Tallahatchie and Panola counties, which came from his mother’s estate.
He devised to Dr. Eugene Bramlett 240 acres of realty; Mrs. McLaurin another 160 acres; and another 1,040 acres to Julian and Barney to share and share alike. He devised an undivided one-half interest he owned in a lot and building in Oxford to Julian. Mrs. Bramlett was also bequeathed the residue of his estate.
Dr. Bramlett devised to Barney the Bramlett Store Building and lot on which it was situated in Oxford:
[f]or the term of his natural life, and at his death to the heirs of his body, and in case no such heirs survive him at the time of his death, the property shall go to the surviving brother and sister of the full blood of my said son Barney Trout-man Bramlett ...
Dr. Bramlett made the following devise to Mrs. Posey:
SEVENTH: I give and bequeath unto my daughter, Emmie Bramlett Posey for the term of her natural life and at her death to the heirs of her body and in case no such heirs survive her at the time of her death, the property shall go to the surviving brother of the full blood of my said daughter, Emmie Bramlett Posey the following described lands in Lafayette County, Mississippi, to-wit: North West quarter of North West quarter of Section 5, 40 acres; a fraction of the North West quarter Section 5, 60 acres; all being in Township 8, Range 2 West: South half North West Quarter Section 32, Township 7, Range 2 West, 80 acres: South West quarter Section 32, Township 7, Range 2 West, 160 acres, containing 340 acres in the aggregate.
(Exhibit 4)
When he executed the will all of Dr. Bramlett’s children were adults.
Mrs. Posey was married to Francis Malcolm Posey, and three children were borne unto their marriage, namely: Emily Ann, Francis Malcolm, Jr., and Eugene Bramlett.
On May 18, 1949, Dr. Bramlett by warranty deed made a gift to Mrs. Posey of a lot in Oxford. While the deed stated that he did for his natural love and affection “convey and warrant to Emmie Bramlett Posey” the described realty, the final paragraph stated:
It is agreed and understood that this is to be a homestead for said Grantee, and she is not to sell, transfer, or dispose of same during her life time, and at her death said property is to become the property of her children, namely: Emily Ann Po-sey, Malcolm Posey, Jr., and Eugene Bramlett Posey.
In either 1946 or 1947, Mrs. Posey had undergone a hysterectomy, and was not capable of bearing children thereafter.
On September 25, 1953, Mr. and Mrs. Posey by lawful adoption proceedings adopted Charles Sherman Posey, who was born August 28, 1953. At the time Mr. Posey was 44 and Mrs. Posey was 40.
On April 5, 1957, pursuant to a petition for re-adoption a re-adoption decree was entered by the chancery court whereby the Poseys re-adopted Charles Sherman so as to take advantage of the broadened inheritance authorized by an adoption act passed at the special session of the Legislature in 1955.
Mrs. Posey in 1964 took out a $5,000 insurance policy on her life, naming *835 Charles Sherman as beneficiary, and which was paid to him when she died.
Following her death, only her natural children paid taxes on the realty devised to her in the will, and only they shared in any income from it.
On January 9, 1985, Emily Ann Posey Webb, then a resident of Texas, filed a partition suit in the chancery court of Lafayette County to partite the 340 acres in kind, alleging that she, her two natural brothers, and her adoptive brother Charles Sherman, were tenants in common, and each owned an undivided one-fourth interest in the realty. Francis and Eugene filed their answer, and therein moved to dismiss the cause as to Charles Sherman, alleging that he had no interest in the land.
Following a hearing on this issue, the chancellor rendered his opinion that Charles Sherman, because of the liberalized adoption statutes in this state, inherited the same interest in the realty as each of his adoptive brothers and sister did.
The natural brothers have appealed.
LAW
What Dr. Bramlett’s attitude would have been towards Charles Sherman we can never know; indeed, speculation is idle. His will was executed three years before his daughter and son-in-law adopted this child. Dr. Bramlett died over two years before Charles Sherman was born; Dr. Bramlett’s estate was closed October 20, 1951.
The only clues are the will itself and a deed Dr. Bramlett made to Mrs. Posey. Dr. Bramlett devised his widow and three of his children their realty in fee. And, as to Barney and Mrs. Posey, when he devised them an undivided interest along with his other children, he made no distinction between them and the other children. But, in the realty he set aside for Barney and Mrs. Posey, individually, he restricted their interest to a life estate.
He furthermore ipade it clear that the remainder interest in Barney’s realty was to go to the “heirs of his body,” and the remainder interest in Mrs. Posey’s realty was to go to the “heirs of her body.” In the 1949 deed he named Mrs. Posey’s three children. It would be difficult to believe also that Dr. Bramlett was not fully aware when he executed his will that Mrs. Posey would have no more natural children.
Dr. Bramlett was an educated man. The distribution of his property under this will indicates he gave considerable thought to the distribution of his property. As a physician he would undoubtedly have a clear and fixed understanding of what “heirs of her body” meant. There is nothing to suggest he meant to expand on this term.
The record does not disclose whether Barney in 1950 had any children or not. Mrs. Posey had three, however, and Dr. Bramlett’s will provided that in event no heirs of her body survived Mrs. Posey, then the remainder was to go to her “surviving brother of the full blood.”
Barney’s devise provided that in event no heirs of his body survived him, then his interest would go to his “surviving brother and sister of the full blood.”
Although the record does not provide us with information as to whether Dr. Bram-lett had two sets of children, the will would indicate he did, that Mrs. Posey and one brother constituted one set, and Barney, a brother and a sister constituted the other.
There is also an insinuation, perhaps no more, that Mrs. Posey did not think Charles Sherman was a remainderman. The $5,000 life insurance policy on her life could have been the value she placed on an undivided interest in the land in 1964. Also, following her death, apparently the natural children did not consider Charles Sherman had any interest in the land.
No profert was made by Charles Sherman as to what the surviving heirs of Dr. Bramlett thought in reference to his devise.
HEIRS OF THE BODY
It is quite plain that heirs of the body literally excludes adopted children. The phrase is so well established that Black’s without reference to case cites defines “heirs of the body” as:
*836 An heir begotten or borne by the person referred to, or a child of such heir; any lineal descendant of the decedent, excluding a surviving husband or wife, adopted children, and collateral relations; bodily heir. May be used in either of two senses: In their unrestricted sense, as meaning the persons who from generation to generation become entitled by descent under the entail; and in sense of heirs at law, or that those persons who are descendants of him whom the statute of descent appoints to take intestate estate. [Emphasis added]
Black’s Law Dictionary, 712 (5th Ed. 1979). See also Restatement of Property, § 306 Comment G (1940).
[T]he ordinary meaning of “heirs of the body” is lineal descendants of a named person who can take under the statute. It has a biological overtone which excludes a wife or husband and also adopted children.
In re: Trust Estate of Kanoa, 47 Hawaii 610, 759, 393 P.2d 753 (1964).
The crucial question in this case is whether or not the Legislature in 1955 by its liberal extensions of rights of inheritance by and between adopted children and their adopting parents is such that courts should construe a will provision of this nature to include adopted children of a life estate devisee.
“Heirs of the body” has a technical meaning which this Court is bound to uphold absent contrary intent expressed by the testator. The phrase is an express limitation by the testator to the devisee’s biological heirs. See Diemer v. Diemer, 717 S.W.2d 160 (Tex.Ct.App.1986); Tootle v. Tootle, 22 Ohio St.3d 244, 490 N.E.2d 878 (1986); First Nat’l Bank of Kansas City v. Sullivan, 394 S.W.2d 273 (Mo.1965); Turner v. Turner, 260 S.C. 439, 196 S.E.2d 498 (1973); In re: Trust Estate of Kanoa, supra.
Other terms are not so restrictive to their literal meaning. See generally In re: Coe’s Estate, 42 N.J. 485, 201 A.2d 571 (1964) (“lawful children” includes adopted children); Vaughn v. Gunter, 458 S.W.2d 523 (Tex.Civ.App.1970) (“children” includes adopted children); St. Louis Union Trust Co. v. Hill, 36 Mo. 17, 76 S.W.2d 685 (1934) (“heirs at law” includes adopted children); In re: Heard’s Estate, 49 Cal.2d 514, 319 P.2d 637 (1957) (“lawful issue” includes adopted children); Peele v. Finch, 284 N.C. 375, 200 S.E.2d 635 (1973) (“issue” includes adopted children). Contra Everett v. Dockery, 203 Miss. 125, 33 So.2d 313 (1948) (“issue” does not include adopted children).
The Iowa Supreme Court in Skoog v. Fredell, 332 N.W.2d 333 (Iowa 1983),[1] examined the effect of the phrase “heirs of the body” used in a deed. The grantor deeded the property to his granddaughter for life with remainder to the heirs of her body. The granddaughter adopted Mary Ann Skoog. The Court, after stating “in interpreting a deed the intent of the grant- or is the polestar” (332 N.W.2d at 334), found that the grantor used the phrase “heirs of the body” to mean natural borne children.
The Court in Skoog cited First Nat’l Bank of Kansas City v. Sullivan, supra, where the Missouri Supreme Court was faced with defining the term “heirs of the body of my said daughter” used in the will of Oliver H. Dean. The Court, quoting in part another Missouri case, stated:
In construing the rights of an adopted child to take under a will “ * * * it is not a question of the right of an adopted child to inherit, but simply a question of the testator’s intention with respect to those who are to share in his estate.’’ [Emphasis theirs] Commerce Trust Co. v. Weed, [318 S.W.2d 289 (Mo.1958) ].
Sullivan, supra at 281.
The Missouri Court went on to hold that the phrase “heirs at law” used in Dean’s will did include adoptees, but the phrase *837 “heir of the body of my said daughter” did not include adoptees. The Court stated, “An heir of the body had a well-defined and fixed legal interpretation as an heir begotten of the body; a lineal descendant. It was not synonymous with words ‘children/ ‘issue/ or ‘heirs’.” Sullivan, 394 S.W.2d at 282. Because Dean had the terminology used in his last will, the Court presumed that Dean chose those words with “discrimination and care.”
In Tootle v. Tootle, supra, a 1986 case, the Ohio Supreme Court found that the phrase “heirs of the body” used in the will of Allen Evans excluded adopted persons. Evans bequeathed 177 acres of land to his daughter Verna Tootle and her husband for life and then to the heirs of their bodies. The real property was sold with the proceeds placed in a trust. After the deaths of Verna and her husband, their grandchildren moved to have the trust terminated and the corpus distributed. The lower court had allowed adopted children to share in the distribution, reasoning that heirs and heirs-at-law were indistinguishable from heirs of the body. The Ohio Supreme Court reversed, stating that there is a distinct difference and that “[I]n the absence of contrary evidence, the use of the term ‘heirs of the body’ in anything other than its former statutorily-defined meaning is without legal justification.” Tootle, supra 490 N.E.2d at 881. The Court went on to say, “It is Hornbook law, however, that technical terms in a will must be given their technical meaning and the testator will be presumed, absent differing intent, to be cognizant of that existing legal mean-ing_” Tootle, supra at 881.
We believe that the meaning of the phrase “heirs of the body” clearly and literally excludes adopted children. We, therefore, reverse the trial court and remand for partition proceedings among Emily Ann, Francis Malcolm, Jr., and Eugene Bramlett.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON, J., concurs with written opinion.

. The Court noted that it had previously abandoned the "stranger to the adoption rule” thereby recognizing a presumption that strangers do not differentiate between natural borne and adopted children unless a contrary intent is expressed. Even under this liberal view, the phrase “heirs of the body” shows such contrary intent. See also Elliot v. Hiddleson, 303 N.W.2d 140 (Iowa 1981); In the Matter of the Estate of Nicolaus, 366 N.W.2d 562 (Iowa 1985).